SCARINCI HOLLENBECK
ATTORNEYS AT LAW
1100 VALLEY BROOK AVENUE
P.O. BOX 790
LYNDHURST, NEW JERSEY 07071-0790
Telephone: (201) 896-4100
Attorneys for Defendants, Borough of
Fort Lee, Thomas O. Ripoli, Chief of Police
And Mark Sokolich, Mayor, individually and in
their official capacity
Our File No. 10112.2900

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTONIO HERNANDEZ, <br><br> Plaintiff, <br><br> v. <br><br> BOROUGH OF FORT LEE, THOMAS O. RIPOLI, individually and as Chief of Police for the Borough of Fort Lee, MARK SOKOLICH, individually and as Mayor of the Borough of Fort Lee, JOHN DOE AND JANE DOES 1-10 (fictitious individuals presently unidentifiable) AND ABC CORPORATIONS 1-10- (fictitious corporations or other business entities presently unidentifiable), <br><br> Defendants. | **NOTICE OF REMOVAL** |

TO:   CHIEF JUDGE GARRETT E. BROWN, JR. AND JUDGES OF
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ON NOTICE TO:

Andrew S. Berns, Esq.
Einhorn, Harris, Ascher, Barbarito & Frost
165 E. Main Street, P.O. Box 3010
Denville, NJ 07834-3010

{00477134.DOC}

**PLEASE TAKE NOTICE** that Defendants, Borough of Fort Lee, Thomas O. Ripoli and Mark Sokolich, notice the removal of this action, pursuant to 28 U.S.C. §§ 1331 and 1441, et seq., from the Superior Court of New Jersey, Bergen County, Law Division to the United States District Court for the District of New Jersey, and as grounds therefore shows as follows:

## TIMELINESS OF REMOVAL

1.     On or about March 11, 2009, Plaintiff Antonio Hernandez served a Summons and Complaint on Defendants, Borough of Fort Lee, Thomas O. Ripoli and Mark Sokolich.    See Exhibit A (attached hereto), Complaint.

2.     The Complaint contains three (3) Counts. The Second Count alleges a violation of 42 U.S.C. §1983, alleging discrimination due to Plaintiff's ethnicity.  The Third Count alleges a violation under 42 U.S.C. § 1985, alleging that the Plaintiff's due process rights under the United States Constitution were violated.

3.     The Supreme Court of the United States has affirmatively established that the thirty (30) day period to remove an action to federal court begins to run on the date of service of the Summons.  Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 354 (1999).

4.     All named Defendants consent to this removal.

5.     Accordingly, pursuant to 28 U.S.C. § 1446(b), this Notice of Removal has been timely filed within thirty (30) days after the named Defendants were served.

## BASIS FOR REMOVAL

6.     This action is properly removable under 28 U.S.C. § 1441(a)-(c), because the United States District Court has original jurisdiction in this case under 28 U.S.C. § 1331, which provides as follows:

> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

7.      In the Complaint, Plaintiff alleges that Defendants violated Plaintiff's civil rights granted by the Constitution of the United States pursuant to 42 U.S.C. § 1983 and under 42 U.S.C. §1985.  <u>See</u> Exhibit A,  Complaint, Second Count and Third Count.

8.      Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

9.      Moreover, this Court has supplemental jurisdiction over Plaintiff's various pendent state law claims pursuant to 28 U.S.C. § 1367.

10.     Defendants have not previously sought similar relief.

WHEREFORE, Defendants respectfully request this Honorable Court take jurisdiction of this action and issue all necessary orders and process to remove said action to the United States District Court for the District of New Jersey.

Respectfully submitted,

SCARINCI HOLLENBECK
Attorneys for Defendants,
Borough of Fort Lee, Thomas O. Ripoli
and Mark Sokolich

By:  _s/MitchellB. Jacobs_____
        MITCHELL B. JACOBS

Dated:  March 26, 2009

**LOCAL CIVIL RULE 11.2 CERTIFICATION**

      I, Mitchell B. Jacobs, Esq., counsel for Defendants, certify that the matter in controversy is not the subject of any other action pending in any court nor any pending arbitration or administrative proceeding.

                         SCARINCI HOLLENBECK
                         Attorneys for Defendants,
                         Borough of Fort Lee, Thomas O. Ripoli
                         and Mark Sokolich


                         By:  *s/Mitchell B. Jacobs*
                            MITCHELL B. JACOBS

Date:  March 26, 2009

## CERTIFICATION OF SERVICE

I hereby certify that I served copies of this Notice of Removal via New Jersey Lawyers Service on this 26th day of March, 2009 on:

Andrew S. Berns, Esq.
Einhorn, Harris, Ascher, Barbarito & Frost
165 E. Main Street, P.O. Box 3010
Denville, NJ  07834-3010

Clerk of the Superior Court
Bergen County Courthouse
Justice Center
10 Main Street
Hackensack,  New Jersey 07601

By:  *s/Mitchell B. Jacobs*
      MITCHELL B. JACOBS

Dated: March 26, 2009

# EXHIBIT A

{00358664.DOC}

EINHORN, HARRIS, ASCHER, BARBARITO & FROST
A Professional Corporation
165 E. Main Street
P.O. Box 3010
Denville, New Jersey 07834-3010
(973) 627-7300
Attorneys for Plaintiff

| | | |
|---|---|---|
| ANTONIO HERNANDEZ, | ) | SUPERIOR COURT OF NEW JERSEY |
| | ) | LAW DIVISION: BERGEN COUNTY |
| Plaintiff, | ) | |
| | ) | Docket No. *BER-L-2019-09* |
| vs. | ) | |
| | ) | Civil Action |
| | ) | |
| BOROUGH OF FORT LEE, THOMAS | ) | **VERIFIED COMPLAINT** |
| O. RIPOLI, individually and as Chief of | ) | |
| Police for the Borough of Fort Lee, | ) | |
| MARK SOKOLICH, individually and | ) | |
| as Mayor of the Borough of Fort Lee, | ) | |
| JOHN DOE AND JANE DOES 1-10 | ) | |
| (fictitious individuals presently | ) | |
| unidentifiable individuals) AND ABC | ) | |
| CORPORATIONS 1-10 (fictitious | ) | |
| corporations or other business entities | ) | |
| presently unidentifiable) | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Antonio Hernandez ("Hernandez"), a New Jersey resident, residing at 41 Tammy Terrace, Wayne, New Jersey, through its counsel, Einhorn, Harris, Ascher, Barbarito & Frost, P.C. by way of Verified Complaint against the Defendants, alleges as follows:

## THE PARTIES

1. Plaintiff, Hernandez, is a Hispanic male and a Borough of Fort Lee Police Officer and as such an employee of Defendant, Borough of Fort Lee ("Fort Lee"). Hernandez and all other Fort Lee Police Officers are supervised by Defendant Chief of Police, Thomas O. Ripoli ("Ripoli"). Hernandez has been a Police Officer in Fort Lee

since October of 2000. Hernandez has been subjected to discrimination in his position as a Police Officer while employed in Fort Lee as a direct and proximate result of the behavior and actions of Defendants Fort Lee, Ripoli and Mayor Mark Sokolich ("Sokolich").

2. Defendant, Fort Lee, is a New Jersey municipality located in the County of Bergen. The Borough of Fort Lee currently employs Hernandez as a Police Officer, and Defendant Ripoli as the Chief of Police. Defendant Sokolich is the Mayor of Fort Lee. Fort's Lee Borough's Offices are located at 309 Main Street, Fort Lee, New Jersey. Defendant Fort Lee has engaged in acts of racial and ethnic discrimination against Plaintiff.

3. Defendant, Ripoli, has a business address located at 1327 16th Street, Fort Lee, New Jersey. Ripoli is the Chief of Police for Fort Lee and as such, oversees all disciplinary actions and makes recommendations to the Mayor and Borough Council regarding promotions. Defendant Ripoli has engaged in acts of racial and ethnic discrimination against Plaintiff.

4. Defendant, Sokolich, has a business address located at 309 Main Street, Fort Lee, New Jersey. Sokolich is the Mayor of Fort Lee and, among other duties, makes recommendations to the Borough Council for promotions of Police Officers. Defendant Sokolich has engaged in acts of racial and ethnic discrimination against Plaintiff.

5. Defendants, John Does and/or Jane Does 1-10 are fictitious individuals who may have discriminated against or contributed, aided or abetted such acts of racial and ethnic discrimination against Plaintiff.

6. Defendants, ABC Corporations 1-10 are fictitious corporations and/or municipal authorities which may have discriminated against or contributed, aided or abetted such acts of racial and ethnic discrimination against Plaintiff.

2–

## FACTS COMMON TO ALL COUNTS

7. Hernandez began his career as a Police Officer in Paterson, New Jersey in 1999 where he served until October of 2000 when he was hired by Fort Lee.

8. There are currently 109 Police Officers on the force, consisting of 81 Police Officers and 28 managers and supervisors at various levels.

9. Hernandez's first assignment was in the Narcotics Division, where he performed his assignments from October of 2000 until January 2001, when he was transferred to the Patrol Division.

10. While Plaintiff was working in the Patrol Division, he applied for a position in the Emergency Services Unit. Without justification, Hernandez was initially denied this position for allegedly not having the sufficient time of service. Hernandez appealed, pointing out that one of the existing officers on the Fort Lee Emergency Services Unit went to the Academy with Hernandez. Hernandez was then accepted on the Emergency Services Unit in 2002. As a result of these events, it became apparent to Hernandez that the Department had no interest in evaluating individuals and issues based upon merit or fundamental fairness, but followed a political and/or racially biased agenda.

11. Throughout Hernandez's time on the police force, he and various other police officers who are members of protected classes have been victimized by disparate treatment when compared to those officers who are Caucasian. Specifically, Defendants Fort Lee, Ripoli, and Sokolich have systematically disciplined Caucasian police officers in a different and more lenient manner than non-Caucasian police officers.

12. Furthermore, Defendants have collectively made a systematic and intentional effort to hire primarily Caucasian police officers whom are related or have close personal relationships with ranking police officers and/or Ripoli, despite Fort Lee being a civil service

3—

municipality.

13. Defendants have collectively made an intentional effort to promote only Caucasian police officers, despite the availability and eligibility of qualified non-Caucasian police officers for various positions. In fact, out of 28 ranking Police Officer positions in the department, none of those positions are currently filled by non-Caucasian officers.

14. On at least one occasion, a Caucasian superior officer told Hernandez in front of other officers and the public that "he would never be in charge"

15. On October 9, 2006, Hernandez was injured in the line of duty and developed Compartment Syndrome, nearly requiring the amputation of one leg The injury was immediately reported by Hernandez pursuant to department policies. However, despite the fact that the injury was incurred in the line of duty, Ripoli promptly dispatched two officers to the hospital to inform Hernandez that the injury was not work-related and he could not collect workers compensation benefits. This determination was clearly beyond the scope of Ripoli's authority. This inappropriate, unsettling, factually and legally incorrect message, delivered to a police officer while hospitalized was transmitted without just cause or any basis whatsoever Eventually, after it was apparent that Hernandez was entitled to workers compensation benefits, Ripoli agreed not to dispute Hernandez's right to collect these benefits.

16. While Hernandez was injured, Captain Ferraro, who is a Caucasian male, attempted to persuade Hernandez to attempt to retire and collect permanent disability.

17. On numerous occasions, Hernandez has heard various managers and supervisors use racist and bigoted remarks with respect to suspects and/or citizens.

18. With respect to the injury which occurred on October 9, 2006, although the treating physician had expected Hernandez to be out of work for approximately eighteen

months, Plaintiff was able to return within eight months  At one point during his recovery, Hernandez's physician sent a letter advising the Borough that Hernandez was physically able to return to light duty and perform desk work  This request to return to light duty was steadfastly denied by Ripoli  Prior to the within allegations being raised by Hernandez, during Hernandez's time on the force, he is unaware of any circumstance in which any Caucasian officer has been denied a request to return to light duty.  Upon information and belief, all other similarly situated Caucasian police officers have been permitted to return on light duty, if medical advice has so dictated.

19.  As a result of the leg injury set forth above and a shoulder injury sustained by Hernandez during the line of duty while arresting a suspect, Ripoli, among other superior officers and the Borough Council, have unjustly classified Hernandez as a "workmans comp abuser"

20  In May 2006, Hernandez was involved in an automobile accident while on duty and during a police pursuit.  As a result of that accident, Hernandez was suspended by Ripoli without justification.  When Hernandez met with his PBA representative, he was told that Ripoli advised him that he would prefer it if you "take your suspension like a man, and it wouldn't go further."  As a result, Hernandez agreed not to file a grievance and took his suspension without pay for fear of further repercussions.  Hernandez has been suspended without pay on two occasions for job-related automobile accidents.

21.  Similarly situated Caucasian officers who are involved in on duty automobile accidents have not been suspended without pay by Defendants Fort Lee and Ripoli.  Fort Lee and Ripoli discipline Caucasian officers in a different and more lenient manner than non-Caucasian officers.

22.  Prior to the filing of this Complaint and prior to the date of the most recent

Amendment to the applicable Ordinance on January 29, 2009, Borough of Fort Lee Ordinance 2007-50, which amended Chapter 90-2, entitled "Police Department - Formation and Rank" provided, in relevant part that "the Police Department Table of Organization **shall** consist of the following positions" (1) Police Chief; (2) Deputy Chiefs; (0) Inspectors; (5) Captains; (10) Lieutenants; (11) Sergeants; and (83) Police Officers.

23   That Ordinance mandated that the Borough employ 11 Sergeants in order to provide the appropriate level of police protection in the community. However, Fort Lee only employed ten Sergeants during all relevant time periods. The Borough has been in violation of the Ordinance since approximately July 20, 2006, as the relevant Ordinance clearly mandates 11 Sergeants are the proper number of Sergeants to be deployed.

24.  From the period of the vacancy on July 20, 2006 until the present, Hernandez has been and still is in first position on the Certification of Eligibles for Appointment. Despite the express language of the Ordinance, Fort Lee has failed to promote Hernandez and has taken clear steps aimed to prevent his promotion.

25   In the summer of 2007, Hernandez spoke with Ripoli to discuss the status of his possible promotion. Ripoli communicated with Hernandez in a threatening manner and in an effort to derail Hernandez's right to be promoted, threatened to invoke the rule of three, which allows any of the first three candidates on the eligibility list to be promoted. The list is comprised of Hernandez first, a Caucasian officer second, and an African American third.

26   This Sergeant's position has never been filled.

27.  Although Fort Lee allegedly instituted a hiring/promotion freeze in January 2008, Fort Lee continued to hire and promote various individuals throughout all levels of the Fort Lee government, including individuals in the Fire Prevention Bureau, Emergency Medical Services Department, and various support positions such as dispatchers. In fact, the

Police Department even hired a new police officer in January 2008. The alleged hiring freeze was initiated approximately 18 months following the Sergeant vacancy.

28. The need for the promotion of a Sergeant is apparent for both police protection and to expedite cost savings in the Department. In 2006, the Borough of Fort Lee spent approximately $52,000 for a staffing study of the Fort Lee Police Department, performed by the Police Executive Research Forum. In the initial draft, which was not released to the public, it was recommended that the Department should add one Sergeant to serve as the Office of Emergency Management Coordinator and supervisor of Community Oriented Policing.

29. Upon information and belief, Defendant Ripoli was extremely concerned about the contents of the initial draft report and the recommendations that would be made regarding a reduction in manpower and the Table of Organization. Upon further information and belief, Defendant Ripoli communicated his concerns to various individuals, including those involved in the preparation of the final recommendations.

30. On December 18, 2006, the final draft of the staffing study was released, and for reasons apparent to Hernandez, set forth the recommendation that the Department should add one lieutenant position to serve as the Office of Emergency Management Coordinator and supervisor of Community Oriented Policing and eliminated the original recommendation for the addition of a Sergeant. At this time, Hernandez was in first position to be elevated to the Sergeant position and the third position was occupied by an African American male officer. This final recommendation would allow manipulation of the staffing to permit a Caucasian Sergeant to be elevated to Lieutenant, without the requirement to promote a minority to Sergeant. At the time of this decision through the current date, all Sergeants are Caucasian. Clearly, Defendants did not want to promote a minority candidate and promotion of the

7–

Caucasian Police Officer outside of the recommendations of the staffing study would have been transparent.

31. Further evidence of the need for the promotion of Hernandez to Sergeant was the amount of overtime spent on Lieutenants and Sergeants in calendar years 2007 and 2008. In total, overtime for Lieutenants and Sergeants in 2007 totaled approximately $242,351.84. In 2008, overtime for Lieutenants and Sergeants was approximately $200,000.00. For purposes of staffing, Sergeants can fill in for Lieutenants when a Lieutenant is needed on duty, and therefore Lieutenant overtime is relevant to the evaluation of relevant overtime costs.

32. Appropriate promotion of Hernandez to Sergeant would have provided Hernandez a raise of approximately $10,000.00 per year, and when considering the potential overtime cost savings, certainly justified the need to promote Hernandez to Sergeant. Thus, Hernandez's promotion would have saved the Department a substantial amount of overtime in 2007 and 2008 alone and been justified as a cost saving measure for the Department.

33. On January 15, 2009, the Mayor and Borough Council introduced an amendment to Borough Ordinance 90-2, via Ordinance number 2009-3, which changed the language of the Ordinance to provide that "the Police Department Table of Organization **may** consist of not more than the following positions at the sole discretion of the Mayor and Council". The Table provided for as follows: (1) Police Chief; (1) Deputy Chiefs; (0) Inspectors; (5) Captains; (10) Lieutenants; (11) Sergeants; and (81) Police Officers.

34. On January 29, 2009, the Borough Council adopted Ordinance number 2009-3. Upon information and belief, the language was changed in order to circumvent the mandatory promotion of Hernandez given the prior suggestion of this prospective litigation. Importantly, the Sergeant position remains unfilled.

8–

35  Defendant Sokolich in concert with Chief Ripoli have amended the Table of Organization on numerous occasions in order to promote the Caucasian officers to the positions Defendants want them to fill in their unfettered discretion  The Borough Council, which consists of all Caucasian men and one Caucasian woman, have allowed Defendants Sokolich and Ripoli to discriminate and engage in nepotism

36  The Fort Lee Police Department currently has a total of 109 sworn officers with 28 of those officers maintaining the positions of managers and supervisors, with the titles set forth in the Ordinance above.  All the 28 managers and supervisors (25% of the police force), are Caucasian, despite qualified and eligible officers like Hernandez being available while supervisory positions have been left open.  Fort Lee alleges it is an equal opportunity employer, although approximately 40% of the population is not Caucasian.

37.  Upon information and belief, Fort Lee and Defendants Ripoli and Sokolich are waiting for the active Sergeant promotional list to expire with the hope that a Caucasian will next be in first position on the succeeding list.

38.  Hernandez has been treated in a harassing and discriminatory manner by several of his Caucasian supervisors.  In fact, at one point in time, he was challenged by Captain Ferraro to a fight.  The Fort Lee Police Department intentionally disregards Hernandez's accomplishments and excellent reputation in the Fort Lee community

39  As a result of the foregoing, Plaintiff has been damaged and will continue to be damaged

## FIRST COUNT
### (New Jersey Law Against Discrimination)

40.  The Plaintiff repeats and realleges the foregoing allegations of the Verified Complaint as if fully set forth herein.

9–

41. Defendants Fort Lee, Ripoli and Sokolich have refused to promote Hernandez to the level of Sergeant although he is qualified and eligible for the position, as a result of Hernandez's ethnicity.

42. Hernandez has been in first position on the active promotional list for the position of Sergeant since July of 2006.

43. The Borough Ordinance has required that the Police Department have 11 Sergeants. However, Fort Lee has employed only 10 Sergeants throughout the time Hernandez has been in first position of the active Sergeant promotional list.

44. Furthermore, Defendants' conduct toward Hernandez has denied him the opportunity to obtain the Sergeant's position. Specifically, Defendants have discriminated against Hernandez by disciplining Hernandez in a different manner than similarly situated Caucasian police officers in Fort Lee.

45. The entire Fort Lee Borough and Police Department administration consists of all Caucasians, including Defendant Chief Ripoli, Mayor Sokolich and the Borough Council.

46. Defendants conduct has denied Hernandez the opportunity to obtain employment and all rights and privileges to which he is entitled as a result of his race, nationality, color, national origin and ancestry.

47. Defendants' conduct violates the New Jersey Law Against Discrimination as set forth in N.J.S.A. 10:5-12, *et seq.*

48. As a proximate result of Defendants' conduct, Plaintiff has been damaged and continues to be damaged.

**WHEREFORE**, Plaintiff requests judgment against Defendants as follows:

a.    Back pay for lost wages and employee benefits;

b.    Compensatory, consequential and punitive damages;

c       Immediate promotion to the position of Sergeant;

d       Award of costs of suit and attorney fees pursuant to N.J.S.A. 10:5-12,

et seq.;

e.      Any other damages this Court deems just and equitable

## SECOND COUNT
### (42 U.S.C. § 1983)

49. The Plaintiff repeats and realleges the foregoing allegations of the Verified Complaint as if fully set forth herein.

50. Defendants Fort Lee, Ripoli and Sokolich have refused to promote Hernandez to the level of Sergeant although he is qualified and eligible for the position, as a result of Hernandez's ethnicity.

51. Hernandez has been in first position of the active promotional list for the position of Sergeant since July of 2006.

52. The Borough Ordinance has required that Police Department have 11 Sergeants. However, Fort Lee has employed only 10 Sergeants throughout the time Hernandez has been in first position of the active Sergeant promotional list.

53. Furthermore, Defendants' conduct toward Hernandez has denied him the opportunity to obtain the Sergeant's position. Specifically, Defendants have discriminated against Hernandez by disciplining Hernandez in a different manner than similarly situated Caucasian police officers in Fort Lee.

54. Defendants Fort Lee, Ripoli and Sokolichs' conduct has deprived Hernandez of the rights, privileges, or immunities secured by the Constitution and laws, without due process of law.

55. Defendants Fort Lee, Ripoli and Sokolich intentionally acted in a discriminatory

manner or acted with "deliberate indifference" toward the discrimination of Hernandez.

56  Defendant Fort Lee, Ripoli, and Sokolich demonstrated a policy, practice and/or custom of discrimination in discipline and hiring/promotion, proximately resulting in Constitutional harm to Hernandez

57  Defendants' conduct violated 42 U.S.C. § 1983.

58.  As a proximate result of Defendants intentional conduct, Plaintiff has been damaged and will continue to be damaged.

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

a       Back pay for lost wages and employee benefits;

b       Compensatory, consequential and punitive damages;

c.      Immediate promotion to the position of Sergeant;

d       Award of costs of suit and attorney fees pursuant to 42 U.S.C. § 1983;

e.      Any other damages this Court deems just and equitable.

## THIRD COUNT

### (42 U.S.C. § 1985)

59.  The Plaintiff repeats and realleges the foregoing allegations of the Verified Complaint as if fully set forth herein.

60.  Defendants engaged in invidious, purposeful and intentional discrimination against Hernandez as a result of his race and ethnicity, as set forth throughout.

61.  Defendant Fort Lee, Ripoli, and/or Sokolich engaged in a conspiracy to discriminate against Hernandez.  Ripoli makes promotion recommendations to Mayor Sokolich, who then makes a formal recommendation to the Fort Lee Council.  Promotions require approval by a majority of the six member Council.

12–

62. Defendants intentionally discriminated against Hernandez by failing to promote him despite his being eligible and qualified for the position of Sergeant. Defendants whom are all Caucasian, acted in concert to discriminate against Hernandez

63. All managers and supervisors of the Fort Lee Police Department are Caucasian and were chosen by recommendation and approval by the Fort Lee governing body.

64. Defendants' conspiracy was motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, Hernandez of the equal protection of the laws.

65. Defendants engaged in numerous acts in furtherance of the conspiracy as set forth in the Facts Common To All Counts.

66. Defendants' conspiracy resulted in an injury to Hernandez and the deprivation of any right or privilege he is entitled to as a citizen of the United States.

67. Defendants' conduct violated 42 U.S.C. § 1985.

68. As a proximate result of Defendants intentional conduct, Plaintiff has been damaged and will continue to be damaged.

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

    a    Back pay for lost wages and employee benefits;

    b.    Compensatory, consequential and punitive damages;

    c    Immediate promotion to the position of Sergeant;

    d.    Award of costs of suit and attorney fees pursuant to 42 U.S.C. § 1985;

    e.    Any other damages this Court deems just and equitable.

**EINHORN, HARRIS, ASCHER,**
**BARBARITO & FROST**
Attorneys for Plaintiff

BY: _Andrew S. Berns_
ANDREW S. BERNS

Dated: February 27, 2009

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all triable issues.

**EINHORN, HARRIS, ASCHER,**
**BARBARITO & FROST**
Attorneys for Plaintiff

Dated: February 27, 2009      BY: _Andrew S. Berns_
ANDREW S. BERNS

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Andrew S. Berns, Esq. is hereby designated trial counsel for Plaintiff.

**EINHORN, HARRIS, ASCHER,**
**BARBARITO & FROST**
Attorneys for Plaintiff

BY: _Andrew S. Berns_
ANDREW S. BERNS

14—

## CERTIFICATION PURSUANT TO RULE 4:5-1

I, Andrew S. Berns certify that:

1. I am an attorney at law of the State of New Jersey, and a Partner with Einhorn, Harris, Ascher, Barbarito & Frost, PC, attorneys for the Plaintiff, Antonio Hernandez

2. Upon information and belief, the matter in controversy is not the subject of any other action pending in any Court or of a pending arbitration proceeding; and no other action or arbitration proceeding is contemplated   At this time, Plaintiff knows of no other party who should be joined in the action.

3. The within pleading was filed with the Court and served upon all counsel of record within the time period prescribed by the Rules of the Court, or as agreed to by all the parties.

I CERTIFY that the foregoing statements made by me are true.  I am aware that if any of the statements are willfully false, I am subject to punishment.

EINHORN, HARRIS, ASCHER,
BARBARITO & FROST, P.C.
Attorney for Plaintiff

BY: _Andrew S. Berns_
　　　ANDREW S. BERNS

## VERIFICATION

I, ANTONIO HERNANDEZ of full age being duly sworn according to law upon my oath, depose and say:

1. I am the Plaintiff in this matter.

2. I have read the foregoing Complaint and attest that the statements and allegations made in it are true to the best of my knowledge and belief.

3. I am aware that if any of the foregoing statements made by me are false, I am subject to punishment

ANTONIO HERNANDEZ

16—