# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTONIO HERNANDEZ, | Hon. Faith S. Hochberg, U.S.D.J. |
| Plaintiff, | Civil Action No.: 2:09-cv-1386 |
| v. | **DOCUMENT FILED ELECTRONICALLY** |
| BOROUGH OF FORT LEE, THOMAS O. RIPOLI, individually and as Chief of Police for the Borough of Fort Lee, MARK SOKOLICH, individually and as Mayor of the Borough of Fort Lee, JOHN DOE AND JANE DOES 1-10 (fictitious individuals presently unidentifiable) AND ABC CORPORATIONS 1-10- (fictitious corporations or other business entities presently unidentifiable), | |
| Defendants. | |

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Scarinci Hollenbeck
1100 Valley Brook Avenue
Lyndhurst, New Jersey 07071
(201) 896-4100
Attorneys for Defendants

*Of Counsel:*
    Mitchell B. Jacobs, Esq.

*On the Brief:*
    Adam S. Abramson, Esq.
    Shana T. Don, Esq.

{00556432.DOC}

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................... iii

PRELIMINARY STATEMENT..................................... 1

LEGAL ARGUMENT........................................... 6

POINT I

    STATEMENT OF THE APPLICABLE STANDARD OF
    REVIEW................................................. 6

POINT II

    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR
    OF DEFENDANTS BOROUGH OF FORT LEE, MARK
    SOKOLICH, AND THOMAS RIPOLI BECAUSE PLAIN-
    TIFF HAS FAILED TO MEET HIS BURDEN OF
    ESTABLISHING A CONSPIRACY IN VIOLATION OF 42
    U.S.C. § 1985......................................... 8

    A.   Plaintiff has failed to state a
        cognizable claim under 42 U.S.C.
        § 1985........................................... 9

    B.   Plaintiff's claim is barred by the
        Intracorporate Conspiracy Doctrine............. 12

    C.   Plaintiff has failed to establish that
        Defendants' actions were motivated by a
        racial or otherwise class-based invidi-
        ously discriminatory animus.................... 14

POINT III................................................ 23

    SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR
    OF DEFENDANTS BOROUGH OF FORT LEE, MARK
    SOKOLICH, AND THOMAS RIPOLI BECAUSE PLAIN-
    TIFF HAS FAILED TO MEET HIS BURDEN OF ESTA-
    BLISHING CONDUCT IN VIOLATION OF 42 U.S.C. §
    1983.................................................. 23

    A.   Defendants did not deprive Plaintiff of
        his Constitutional right to equal
        protection..................................... 24

    B.   Defendants did not deprive Plaintiff of

his   Constitutional   right   to   due
process....................................... 28

POINT IV

SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR
OF DEFENDANTS BOROUGH OF FORT LEE, MARK
SOKOLICH,    AND    THOMAS    RIPOLI    BECAUSE
PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF
ESTABLISHING THAT DEFENDANTS VIOLATED THE
NEW   JERSEY   LAW   AGAINST   DISCRIMINATION
("LAD")............................................. 33

POINT V

SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR
OF  DEFENDANTS  MARK  SOKOLICH  AND  THOMAS
RIPOLI   BECAUSE   THEY   ARE   ENTITLED   TO
QUALIFIED IMMUNITY................................ 37

POINT VI

PLAINTIFF   IS   NOT   ENTITLED   TO   PUNITIVE
DAMAGES............................................. 40

A.    Plaintiff  is  not  entitled  to  Punitive
Damages under the LAD........................ 40

B.    Plaintiff  is  not  entitled  to  punitive
damages  for  violations  of  42  U.S.C.  §
1983.......................................... 43

CONCLUSION............................................. 45

## TABLE OF AUTHORITIES

### CASES

Alexander v. Gardner-Denver Co.,
  415 U.S. 36 (1974) ..................................................11

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986) ........................................6

Board of Regents v. Roth,
  408 U.S. 564 (1972) ........................................28, 29

Brandon v. Holt,
  469 U.S. 464 (1985) ........................................43

Carmona v. Resorts Int'l Hotel, Inc.,
  189 N.J. 354 (2007) ........................................33

Catalane v. Gillian Instrument Corp.,
  271 N.J. Super. 476 (App. Div. 1994) ......................41

Cavuoti v. N.J. Transit Corp.,
  161 N.J. 107 (1999) ........................................40

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986) ........................................6, 7

Cleburne v. Cleburne Living Center, Inc.,
  473 U.S. 432 (1984) ........................................24

Delli Santi v. CNA Ins. Cos.,
  88 F.3d 192 (3d Cir. 1996) ................................40

DiGiovanni v. Pessel,
  55 N.J. 188 (1970) ........................................41

Erickson v. Marsh & McLennan Co.,
  117 N.J. 539,550 (1990) ..................................35

Ferris v. County of Camden,
  61 F. Supp.2d 307 (D.N.J. 1999) ..........................13

Fuentes v. Perskie,
  32 F. 3d 759 (3d Cir. 1994) ..............................33, 35

Great American Federal Savings & Loan Association et
  al. v. Novotny,
  442 U.S. 366 (1979) ......................................10, 11, 12

Greenberg v. Camden County Voc. & Tech Sch.,
    310 N.J. Super. 189 (App. Div. 1998) ........................34

Gregory v. Chehi,
    843 F.2d 111 (3d Cir. 1988) ...............................13

Griffin v. Breckenridge,
    403 U.S. 88 (1971) ........................................15

Grimes v. City of East Orange,
    285 N.J. Super. 154 (App. Div. 1995) ......................30

Harlow v. Fitzgerald,
    457 U.S. 800 (1982) .......................................37

Keenan v. City of Phildelphia,
    983 F.2d 459 (1993) .......................................24

Kost v. Kozakiewicz,
    1 F.3d 176 (3d Cir. 1993) .................................28

Levinson v. Prentice-Hall, Inc.
    868 F.2d 558 (3d Cir. 1989) ...............................41

Matthews v. Eldridge,
    424 U.S. 319 (1976) .......................................32

McDonnell Douglas Corp. v. Green, 411 U.S. 792,802
    (1973) ...........................................33, 34, 35

Mogull v. CB Commercial Real Estate Group, Inc., 162
    N.J. 449(2000) ............................................41

Monell v. New York City Department of Social Services,
    436 U.S. 658,690 (1978) ...................................43

Monroe v. Pape,
    365 U.S. 167 (1961) .......................................24

Newport v. Fact Concerts, Inc.,
    453 U.S. 247 (1981) ...................................43, 44

Pearson v. Callahan,
    129 S. Ct. 808 (U.S. 2009) ........................37, 38, 39

Pepe v. Rival Co.,
    85 F. Supp 2d 349 (D.N.J. 1999) ...........................34

*Peper v. Princeton Univ. Bd. of Trustees*,
    77 <u>N.J.</u> 55 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .33, 34

*Pica v. Sarno*,
    907 <u>F. Supp</u>. 795 (D.N.J. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

*Picogna v. Bd. of Educ. of Cherry Hill*,
    143 <u>N.J.</u> 391 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .43

*Pollock v. City of Ocean City*,
    968 F. Supp 187 (1997) . . . . . . . . . . . . . . . . . . . . . .29, 30, 31, 32, 39

*Rendine v. Pantzer*,
    141 <u>N.J.</u> 292 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

*Robb v. City of Philadelphia*,
    733 F.2d 286 (3d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29

*Robinson v. Canterbury Village, Inc.*,
    848 F.2d 424 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Saucier v. Katz*,
    533 <u>U.S.</u> 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .38

*Schroder v. Kiss*,
    74 <u>N.J.</u> Super. 229 (App. Div. 1962) . . . . . . . . . . . . . . . . . . . . . . . .30

*Scott v. Tp. of Bristol*,
    1990 U.S. Dist. LEXIS 15313 (E.D. Pa. 1991) . . . . . . . . . . . . . . . .14

*Smith v. Wade*,
    461 <u>U.S.</u> 30 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .44

*Smith v. Whitaker*,
    160 <u>N.J.</u> 221 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

*Sunkett v. Misci*,
    183 F. Supp.2d 691 (D.N.J. 2002) . . . . . . . . . . . . . . . . . . . . . . .13, 14

*West v. Atkins*,
    487 <u>U.S.</u> 42 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

## **<u>RULES</u>**

Fed.R.Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Rule 56 (e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

**STATUTES**

42 U.S.C. 1983....................................................23

42 U.S.C. 1985(3).................................................9

42 U.S.C. § 2000e..............................................9, 33

42 U.S.C. 2000e-2................................................10

42 U.S.C. § 1983............................................passim

42 U.S.C. § 1985............................................passim

42 U.S.C. § 1985(3).........................................passim

N.J.A.C. 4A:4-2.1................................................25

N.J.A.C. 4A:4-2.2................................................25

N.J.A.C. 4A:4-2.3................................................25

N.J.A.C. 4A:4-3.1................................................26

N.J.A.C. 4A:4-3.2................................................26

N.J.A.C. 4A:4-4.1................................................26

N.J.A.C. 4A:4-4.2................................................26

N.J.A.C. 4A:4-4.8................................................26

N.J.S.A. 10:5-3.................................................42

N.J.S.A. 10:5-12................................................33

N.J.S.A. 11A:2-1................................................32

N.J.S.A. 2A:15-5.12.............................................40

N.J.S.A. 34:13A-1...............................................31

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Antonio Hernandez ("Plaintiff" or "Hernandez"), a Hispanic Officer with the Borough of Fort Lee ("Borough") Police Department, ranked number three (3) on the certified list of eligibles for promotion to the rank of Sergeant.   Subsequent to the promotion of the first and second ranked officers, the Borough, as a result of severe financial constraints, instituted a hiring and promotional freeze. The list of eligibles that Plaintiff appeared on expired seven (7) months thereafter, without the Plaintiff having been promoted.

Thereafter, Plaintiff sat for the Sergeant's exam a second time and this time ranked somewhere below the eighth position on the list of eligibility.   No one appearing on said list, including those sitting in the first three (3) positions, have been promoted off said list, and the hiring and promotional freeze remains in effect.

Plaintiff filed this Complaint charging that the Defendants conspired against him in violation of 42 <u>U.S.C.</u> § 1985 to deny him a promotion.   He also claimed that he was discriminated against by Defendants based on his race and ethnicity in violation of 42 <u>U.S.C.</u> § 1983 and the New Jersey Law Against Discrimination ("LAD"), and that his due process and equal protection rights were violated.

Following the exchange of voluminous discovery and the

{00556432.DOC }

deposition of multiple witnesses, however, Plaintiff is unable to establish that his not being promoted was done for discriminatory reasons and was not due to the Borough's institution of the hiring and promotional freeze. Consequently, the Borough's decision not to promote Plaintiff was the result of nothing more than financial circumstances and policy.   There was no evidence, whatsoever, of any discrimination, and, in fact, of the nine (9) other Hispanic officers of the Borough who were deposed, not one of them said that they felt that they were ever discriminated against and/or treated unfairly based upon their race or ethnicity.

As such, it is clear that neither the Borough of Fort Lee, Mayor Sokolich, or Chief Ripoli discriminated against Plaintiff, conspired to deny him a promotion, or in anyway denied him of any Constitutional entitlements.   For these reasons, Summary Judgment in favor of Defendants should be granted.

By way of background, the Borough of Fort Lee ("Defendant" or "Borough") is a municipality located in Bergen County, New Jersey.   Mark Sokolich ("Sokolich" or "Mayor"), the current Mayor, was elected in November 2007 and sworn in on January 2008.   (**Exhibit K**, Deposition of Mayor Sokolich, 27:18-28, 35: 18-19).   Within the Borough, the Chief of Police is delegated the authority to run the day-to-day operations of the Police Department. He also supervises inferior officers and may

discipline officers within his discretion, limited by certain exceptions within the exclusive purview of the Mayor and Council. Thomas O. Ripoli has served as Chief of Police since or about 2004.

Plaintiff has been employed as an Officer with the Borough since or about October 2000. (**Exhibit A**, Complaint ¶1). Chief Tessaro headed the Department when Plaintiff was hired. Since then, Plaintiff has served under both Chiefs Tessaro and Ripoli. (**Exhibit H**, Deposition of Antonio Hernandez, Part I, 146:5-25).

All promotions in the Fort Lee Police Department are governed by the Civil Service rules and regulations. (**Exhibit D**, Deposition of Peggy Thomas, 14:20-21). It is within the Borough's discretion to determine whether to make a promotion. (**Exhibit D**, Deposition of Peggy Thomas, 190:17-21). If a position in the Borough's Table of Organization becomes vacant, the Chief of Police may make a request to the Mayor that a promotion be made to fill the position. (**Exhibit D**, Deposition of Peggy Thomas, 97:17-25 & 98:1-11). (See also, **Exhibit H**, Deposition of Antonio Hernandez, Part I, 57:4-25 & 58:1-5).

When such a request is made, the Borough Administrator requests a certified "list of eligibles" from the Civil Service Commission. The Borough Council, and not the Mayor or Chief of Police, then votes to make the ultimate decision as to whether to promote someone from the list of eligibles. (**Exhibit D**,

Deposition Peggy Thomas, 112:1-7).

On two (2) occasions, Plaintiff has taken the promotional exam for Sergeant. The first time he took the exam he ranked third on the list of eligibles. The second time he was ranked somewhere below eighth. Officer Hernandez is uncertain of his exact place on the current promotional list of eligibles. (**Exhibit H**, Deposition of Antonio Hernandez, Part I, 148:8-21). Officers Krautheim and Zusi were ranked number one and two on the promotional list on which Officer Hernandez was ranked third. (**Exhibit H**, Deposition of Antonio Hernandez, Part I, 149:7-12). Officers Krautheim and Zusi were promoted and, as a result, Officer Hernandez became first on the list of eligibles. (**Exhibit H**, Deposition of Antonio Hernandez, Part I, 149:13-14).

On February 28, 2008, due to fiscal constraints, the Borough of Fort Lee, by vote of Council, approved a resolution instituting a hiring and promotional freeze. (**Exhibit D**, Deposition of Peggy Thomas, 157:9-18). The Resolution, dated February 28, 2008, provided that due to, "severe fiscal constraints now facing the Borough in its budget formation and the monetary burden on the Borough's taxpayers . . . a hiring freeze is necessary . . . ." It was further resolved, by the Mayor and Council, that the Borough would not hire any new employees, fill new positions when an employee leaves, or grant any voluntary raises that are not contractually required.

(**Exhibit J**, Borough Resolution). Since the hiring and promotional freeze was instituted, no promotions have been made within the police department. (**Exhibit D**, Deposition of Peggy Thomas, 167: 6-9).

The Borough's hiring and promotional freeze went into effect approximately seven (7) months before the original list of eligibles, on which defendant was listed as first, expired. (**Exhibit H**, Deposition of Antonio Hernandez, Part I, 150:10-20). Plaintiff did not receive a promotion to fill the open sergeant's position. More importantly, no other officer was promoted to the open sergeant's position.

On or about March 11, 2009, Plaintiff filed a Complaint in Superior Court alleging that Defendants, Borough of Fort Lee, Mayor Ripoli and Chief Sokolich discriminated against him based on his race and ethnicity and deprived him of his Constitutional rights to equal protection and due process.

On or about March 26, 2009, Defendants filed a Notice removing the matter to Federal Court. Depositions were taken and discovery was exchanged. Discovery is now complete, and Defendants file this Motion for Summary Judgment as there are no genuine issues with regard to any material facts and Defendants are entitled to judgment as a matter of law.

## LEGAL ARGUMENT

### POINT I

**STATEMENT OF THE APPLICABLE STANDARD OF REVIEW.**

The standard for granting summary judgment is well-established: summary judgment is proper if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

Federal Rule of Civil Procedure 56(c) imposes the burden on the moving party to demonstrate that there is an absence of evidence to support the case of the non-moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party makes this showing, the burden then shifts to the non-moving party to "designate specific facts showing that there is a genuine issue for trial." Anderson, supra, at 250. Although the evidence need not be in a form that would be admissible at trial, Celotex, 477 U.S. at 324, Rule 56(e) provides that affidavits opposing summary judgment must be based on personal knowledge.

The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson, supra, at 247. Only

disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. Id. at 247-248.   However, in determining whether there exists a material issue of disputed fact, the District Court will view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party.   If the non-moving party fails, "the moving party is entitled to a judgment as a matter of law." Celotex, 477 U.S. at 323.

## POINT II

**SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF DEFENDANTS BOROUGH OF FORT LEE, MARK SOKOLICH, AND THOMAS RIPOLI BECAUSE PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF ESTABLISHING A CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1985.**

In his Complaint, Plaintiff alleges that Defendants, Borough of Fort Lee ("Borough"), Chief of Police Thomas Ripoli ("Ripoli" or "Chief"), and Mayor Mark Sokolich ("Sokolich" or "Mayor"),(collectively referred to as "Defendants"), conspired to discriminate against him by failing to promote him to the rank of Sergeant. (**Exhibit A**, Complaint at ¶ 62). Specifically, Plaintiff claims that Defendants Sokolich and Ripoli, both of whom are Caucasian, acted in concert to discriminate against him by failing to recommend and nominate him to the Fort Lee Council for a promotion. (**Exhibit A**, Complaint at ¶ 61). Plaintiff further alleges that Defendants' failure to do so was motivated by a "racial or class based discriminatory animus desgined to deprive, directly or indirectly, Hernanadez of the equal protection of the laws." (**Exhibit A**, Verified Complaint at ¶ 64).

Plaintiff, however, has failed to state a cognizable claim under 42 U.S.C. § 1985. The law on such subject matter is clear: rights created solely by the Civil Rights Act of 1964

("Act"), 42 U.S.C. § 2000e et seq., which prohibit discrimination by employers on the basis of race, color, religion, sex or national origin, may not be asserted under § 1985. Moreover, even assuming, *arguendo*, that § 1985 was applicable, Plaintiff's claim would be barred by the intracorporate conspiracy doctrine ("ICD"), and/or would fail because Plaintiff could not establish any racial or otherwise class-based invidiously discriminatory animus, as required.

**A.   Plaintiff has failed to state a cognizable claim under 42 U.S.C. § 1985.**

Plaintiff alleges that Defendants Borough of Fort Lee, Ripoli and/or Sokolich engaged in a conspiracy to intentionally discriminate against him as a result of his race and ethnicity by failing to promote him. (**Exhibit A**, Complaint, ¶¶ 60-62). However, a civil action for damages under 42 U.S.C. 1985(3)[1] may not be brought to redress violations of rights created by Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq., due to the fact that: (1) § 1985(3) creates no substantive rights coextensive with those set forth in Title VII, but is a purely remedial statute providing a cause of action when a defined federal right is breached by a conspiracy, and (2) to permit Title VII rights to be asserted within the remedial

---

[1] 42 U.S.C. 1985(3) is the surviving version of 2 of the Civil Rights Act of 1871.

framework of 1985(3) would allow a complainant to avoid most of Title VII's detailed and  specific procedural provisions, which are designed to provide non-judicial and non-adversarial resolution of job discrimination claims, and to completely bypass Title VII's administrative enforcement scheme, thereby impairing the statute's effectiveness. Great American Federal Savings & Loan Association et al. v. Novotny, 442 U.S. 366 (1979).

Title VII of the Act prohibits an employer from failing or refusing to hire, or discharging any individual, or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. 2000e-2.

Here, Plaintiff's allegations with regard to race should have been brought under Title VII because § 1985 cannot be invoked to redress Title VII violations. Great American, supra. "Under Title VII, cases of alleged employment discrimination are subject to a detailed administrative and judicial process designed to provide an opportunity for non-judicial and non-adversary resolution of claims. Id. at 372.

Specifically, the Supreme Court stated:

> Congress enacted Title VII of the Civil
> Rights Act of 1964 . . . to assure equality
> of employment opportunities by eliminating

> those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin . . . Cooperation and voluntary compliance were selected as the preferred means for achieving this goal. To this end, Congress created the Equal Employment Opportunity Commission and established a procedure whereby existing state and local employment opportunity agencies, as well as the Commission, would have an opportunity to settle disputes through conference, conciliation, and persuasion before an aggrieved party was permitted to file a lawsuit.

Id. at 373; citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 44 (1974).

This statutory plan prevents the immediate filing of judicial proceedings in order to encourage voluntary conciliation. Great American, supra, at 374. Moreover, the majority of the federal courts have held that the Act does not allow a court to award general or punitive damages. Id. at 374-375. Additionally, "the Act expressly allows the prevailing party to recover his attorney's fees, and, in some cases, provides that the district court may appoint counsel for the plaintiff. Because the Act expressly authorizes only equitable remedies, the courts have consistently held that neither party has a right to a jury trial." Id.

If a violation of Title VII could be asserted through § 1985(3), a complainant could avoid most if not all of [the] detailed and specific provisions of the [Act] as § 1985

expressly authorizes compensatory damages.  Punitive damages may also be awarded and a party may demand a jury trial. Id. at 375-376.  Moreover, the short and precise time limitations of Title VII would be "grossly altered." Id. at 376.  For these reasons, the Great American Court determined that "unimpaired effectiveness can be given to the plan of Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." Id.

Accordingly, Plaintiff's claim that he was discriminated against by Defendants based upon his race, if true, would constitute a violation of a right established by Title VII.  As such, pursuant to the holding in Great American, this claim cannot be the basis for action under § 1985(3), and, as such, Summary Judgment should be granted.

## B.    Plaintiff's claim is barred by the Intracorporate Conspiracy Doctrine.

Assuming, *arguendo*, that Plaintiff could bring a claim under § 1985, this claim would still be barred by the Intracorporate Conspiracy Doctrine ("ICD").  Under this theory, "a corporation's employees acting as agents of the corporation are deemed incapable of conspiring with the corporation." Robinson v. Canterbury Village, Inc., 848 F.2d 424, 431 (3d Cir. 1988).  The rationale behind the doctrine is simple:  a corporation, as a legal entity, can only act through its agents.

Thus, an alleged conspiracy between the corporation and its agents is, essentially, a conspiracy between the entity and itself; which is no conspiracy at all. Id. The application of this doctrine to governmental entities, as corporations, has been widely recognized by the District Courts of this jurisdiction.

In Sunkett v. Misci, 183 F. Supp.2d 691 (D.N.J. 2002), Plaintiffs allege that defendants, City of Camden, the Mayor and other city officials conspired under 42 U.S.C. § 1985(3) and New Jersey common law to deprive plaintiffs of their constitutional right to be free of invidious discrimination based upon race. Id. at 695. The District Court, in granting defendants' Motion for Summary Judgment, held that based upon the ICD, defendants, as city officials, could not conspire with the City of Camden. Id. at 723 (citing Gregory v. Chehi, 843 F.2d 111, 118 (3d Cir. 1988) (Court expressed doubt as to whether township officials, acting within their official capacities, could enter into an actionable conspiracy with their municipality)).

Similarly, in Ferris v. County of Camden, 61 F. Supp.2d 307 (D.N.J. 1999), the District Court held that based upon the ICD, the defendant Chairman of a county political committee could not, as a matter of law, conspire with the committee. Id. at 328. The Court reasoned that because a political committee, like a corporation, could only act through its officers,

employees and authorized agents, the alleged conspiracy between the committee and its employees would fail as a matter of law because the committee could not conspire with itself. Id.; see also Sunkett, supra, at 723 ("an abstract entity can only act through its officers so that a conspiracy between the officers and the entity is like a dance with its own shadow"); see also Scott v. Tp. of Bristol, 1990 U.S. Dist. LEXIS 15313 (E.D. Pa. 1991) (pursuant to the ICD, plaintiff's conspiracy claim against the individual defendants and the Township under § 1985(3) must be dismissed).

Thus, the ICD clearly prevents Plaintiff in the present matter from presenting a viable claim of conspiracy pursuant to 42 U.S.C. § 1985. Plaintiff identifies Chief Ripoli, Mayor Sokolich, and the Borough of Fort Lee as co-conspirators. However, in accordance with the District Court opinions cited herein, it is a legal impossibility for the Borough to conspire with its Mayor and Chief of Police since they function as agents of same. As such, summary judgment should be granted with regard to Plaintiff's conspiracy claim under 42 U.S.C. § 1985 against all Defendants.

**C.    Plaintiff has failed to establish that defendants' actions were motivated by a racial or otherwise class-based invidiously discriminatory animus.**

Assuming again, *arguendo*, that Plaintiff could bring a claim under § 1985, and further assuming that that ICD did not

apply, Plaintiff's claim would still fail because Plaintiff could not establish that Defendants' actions were racially motivated. To state a claim for conspiracy to violate civil rights, a plaintiff must prove: (1) a conspiracy by the defendants, (2) designed to deprive plaintiff of the equal protection of the laws, (3) the commission of an overt act in furtherance of that conspiracy, (4) a resultant injury to person or property or a deprivation of any right of privilege of citizens, and that (5) defendant's actions were motivated by a racial or otherwise class-based invidiously discriminatory animus.  See Griffin v. Breckenridge, 403 U.S. 88, 102-103 (1971); Robison v. Canterbury Village, Inc., 848 F.2d 424, 430 (3d Cir. 1988)(deeming racial or other prohibited animus a necessary element of § 1985(3) actions).  Plaintiff has not satisfied any of these criteria.

First, Plaintiff, has presented no evidence to establish that any of the Defendants conspired to deny him equal protection of the laws, and there is no evidence whatsoever of any racial or class based discrimination.  On the contrary, Plaintiff admitted that from the very beginning of his employment with the Borough, he was given, what he would consider to be, prestigious assignments.  Specifically, he testified:

Q:  So once you were assigned to Narcotics

in Fort Lee, were you undercover, non-
uniform for any period of time?

**A:** **Yes.**

Q: How long were you on that detail for?

**A:** **I would say from October to January.**

Q: Now, would you consider that undercover
narcotics detail more prestigious than
just being a patrol officer riding
around in a car or on street patrol?

**A:** **I would say it's definitely a good
detail.  At the time as a rookie
officer, yeah.  At the time, yes.**

Q: Would other people in the Fort Lee
Department, Police Department also
consider that to be more prestigious
than just being a police officer riding
around in a car on patrol?

**A:** **I believe most police officers would.**

(**Exhibit H**, Deposition of Antonio Hernandez, Part I, 108:20-25 &

109:1-14).

In fact, even Plaintiff himself could not deny the

possibility that the incidents of discrimination detailed in his

Complaint could have been the result of something other than a

racial or otherwise class-based discriminatory animus on the part

of Defendants, such as lack of experience.  For example, in his

Complaint, Plaintiff accused the Borough of evaluating individuals

in accordance with a politically and/or racially biased agenda.

(**Exhibit A**, Complaint, ¶ 10).  He added that it was apparent that

the Borough had "no interest in evaluating individuals based upon

merit or fundamental fairness." Id.  In support of this assertion, Plaintiff pointed to the fact that he was denied a position with the Emergency Services Unit ("ESU") "without justification . . . for allegedly not having the sufficient time of service," while a fellow Academy classmate was approved for same.  Yet, when asked specifically during his deposition whether he possessed the requisite qualifications for a position in this Unit at the time, Plaintiff, himself, could not be certain that he did. Specifically, Plaintiff was questioned as follows:

> Q:   Usually speaking, there would be a number of years of service that you would have to have before you would be considered for ESU?
>
> **A:   Yes.**
>
> Q:   How many years of service was that?
>
> **A:   At the time when I requested it, and I believe it's still the same case, it's three years, unless you had experience somewhere else or some type of military experience they could make the —it's not a written, or at the time at least, I don't know if it has become written . . . . It was kind of, like, an unwritten rule that you needed to have three years of policing and/or, you know, have some type of experience that would put you in that position.**
>
> Q:   When you made the request, did you have three years in on the Fort Lee police force?
>
> **A:   No, I did not.**
>
> Q:   Did you have three years of total

service?

A:   **I believe I did.**

Q:   You're not sure?

A:   **I'm not 100 percent sure.**

(**Exhibit H**, Deposition of Antonio Hernandez, Part I, 119:25 & 120:1-25 & 121:1).

In addition, Chief Ripoli, who is named as a Defendant in the Complaint, was not even Chief at the time this request was made as Chief Tessaro was still serving in the position. (**Exhibit H**, Deposition of Antonio Hernandez, Part I, 122:1-2).   More importantly, Plaintiff submitted his request to join ESU on April 14, 2003 and he was placed in the unit on or before May 1, 2002, just two (2) weeks thereafter. (**Exhibit H**, Deposition of Antonio Hernandez, Part II, 21:25-25 & 22:1-20).   Accordingly, there was no injury or deprivation of right.

Plaintiff also alleges that "he and various other police officers who are members of protected classes have been victimized by disparate treatment when compared to those officers who are Caucasian;" citing specifically that Defendants "have systematically disciplined Caucasian police officers in a different and more lenient manner than non-Caucasian police officers." (**Exhibit A**, Complaint, ¶11).   Yet when asked to identify such incidents, Plaintiff could not list a single example of disparate or differential treatment of a Hispanic officer. In

addition, the deposition testimony elicited from the other Hispanic officers within the Department contraverted Plaintiff's allegations. Each Hispanic officer testified that he was never disciplined differently or more harsh than a Caucasian officer.

Gary Moleta, a retired Hispanic Lieutenant who served with the Borough for approximately twenty-three (23) years, and close family friend of Plaintiff, testified in his deposition that he received no major discipline while he was employed by the Department. (**Exhibit L,** Deposition of Gary Moleta 16:14-17, 17:3-4, 18:18-22). In fact, Moleta testified that he had a good relationship with Defendant Chief Ripoli, (**Exhibit L,** Deposition of Gary Moleta, 25:15-18), and emphatically, and without hesitation, denied ever hearing either Chief Tessaro or Chief Ripoli make any discriminatory comments. Specifically:

> Q.   Did you ever recall Tom Tessaro making any discriminatory remarks or comments?
>
> A:   **Never.**
>
> Q.   Do you recall Chief Ripoli ever making any discriminatory comments?
>
> A.   **No.**

(**Exhibit L,** Deposition of Gary Moleta, 58:23-25 & 59:1-3).

Additionally, Officer Alejandro Lorenzo is a Hispanic/Cuban officer who has been employed by the Borough since 2002. (**Exhibit T,** Deposition of Alejandro Lorenzo, 11:7-9). During his tenure with the force, he was invited to join, and served on, the ESU.

(**Exhibit T**, Deposition of Alejandro Lorenzo, 15:11-12 & 19:16-25 & 20:1-7).   He   testified   that   he   never   felt   that   he   was discriminated   against   for   being   Hispanic   and   that   he   has   no knowledge of any other officer feeling discriminated against for this reason. (**Exhibit T**, Deposition of Alejandro Lorenzo 25:5-23).

Officer Jamie Cuevas is a Puerto Rican born officer who has been with the Department since 1999. (**Exhibit S**, Deposition of Jamie Cuevas, 7:22-24 & 10:1-2). Officer Cuevas also serves on the ESU. (**Exhibit S**, Deposition of Jamie Cuevas, 10:25 & 11:1-6).   He testified   that   he   does   not   feel   that   he   has   been   treated differently, harassed, or discriminated against in any way by any Superior Officers while under Chief Ripoli's command. (**Exhibit S**, Deposition of Jamie Cuevas, 27:1-10). He also testified that he did not feel that he was deprived of any promotions or assignments as a result of his ethnicity. (**Exhibit S**, Deposition of Jamie Cuevas, 36:1-5).

Officer Richard Hernandez, hired by the Borough in January of 2003,   describes   himself   as   "Cuban   Hispanic."   (**Exhibit   U**, Deposition of Richard Hernandez, 8:18-25 & 19:1).   During his deposition, he testified that at no time did he feel discriminated against while employed with the Borough. (**Exhibit U**, Deposition of Richard Hernandez, 22:6-14 & 24:1-25 & 25:1-2).   He also testified that although he received minor disciplines, he did not feel that they were unfair. (**Exhibit U**, Deposition of Richard Hernandez,

22:15-22).

Officer Carlos Cabrera describes his ethnicity as Cuban. (**Exhibit W**, Deposition of Carlos Cabrera, 9:18-22). He testified that while Chief Ripoli has served as Chief, he has never felt discriminated against, harassed or treated differently because of his ethnicity. (**Exhibit W**, Deposition of Carlos Cabrera, 20:3-8). He also stated that he has never heard any other Hispanic officer complain of same. (**Exhibit W**, Deposition of Carlos Cabrera, 20:9-17).

Officer Pedro Morey also considers himself Hispanic since both of his parents were born in Ecuador. (**Exhibit X**, Deposition of Pedro Morey, 10:1-8). Officer Morey testified that he has not been discriminated against or treated differently by Chief Tessaro, Chief Ripoli, the Borough Council or any mayor. (**Exhibit X**, Deposition of Pedro Morey, 24:19-25 & 25:1-25 & 26:1)

Finally, Officer Osvaldo Rivera is a Hispanic born officer who has been with the Department since 1995. (**Exhibit R**, Deposition of Osvaldo Rivera, 9:23-25 & 10:1). He has served on the ESU and was awarded the Chief's Award for excellent service in 2008. (**Exhibit R**, Deposition of Osvaldo Rivera, 14:9-19 & 20:3-18). Officer Rivera testified that he was disciplined during his service on the force but added that he did not feel that it was administered any differently than it was with any other officer. (**Exhibit R**, Deposition of Osvaldo Rivera, 29:6-25 & 30:1-20 &

33:3-7).    He  also  testified  that  he  never  felt  discriminated against because of his ethnicity and that he never heard any other officers complain that they were treated unfairly by Chief Ripoli because  of  their  ethnicity.  (**Exhibit  R**,  Deposition  of  Osvaldo Rivera, 26:22-25 & 27:1 & 27:16-20).

Thus,  even  after  deposing  the  other  Hispanic  officers employed  by  the  Borough,  Plaintiff  is  unable  to  establish  either directly  or  circumstantially  that  Defendants'  actions  were motivated  by  a  racial  or  otherwise  class-based  invidiously discriminatory  animus.  In  fact,  all  of  the  other  Hispanic officers,  including  Lieutenant  Moleta,  a  self-described  close family  friend  of  Plaintiff,  testified  that  they  did  not  feel that  they  were  treated  or  disciplined  any  differently  because  of their  race  and/or  ethnicity.   As  such,  and  for  all  of  the foregoing reasons detailed herein, Plaintiff's charge pursuant to 42 U.S.C. § 1985 must fail.

### POINT III

**SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF DEFENDANTS BOROUGH OF FORT LEE, MARK SOKOLICH, AND THOMAS RIPOLI BECAUSE PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF ESTABLISHING CONDUCT IN VIOLATION OF 42 U.S.C. § 1983.**

In his Complaint, Plaintiff alleges that Defendants Borough Fort Lee, Ripoli and Sokolich refused to promote him to the position of Sergeant as a result of his ethnicity. Specifically, he alleges that Defendants engaged in discrimination by diciplining Plaintiff "in a different manner than similarly situated Caucasian police officers." (**Exhibit A**, Complaint, ¶ 53). Although, as detailed above, Plaintiff, in his deposition, could not give a single concrete example of such disparate or differential treatment and the other Hispanic officers testified that they did not feel that they were discriminated against or treated unfairly, Plaintiff maintains that "this conduct has deprived [him] of the rights, privileges, or immunities secured by the Constitution and laws, without due process. . . ." and, as such, was in violation of 42 U.S.C. 1983. (**Exhibit A**, Complaint, ¶¶ 50 and 54).

42 U.S.C. § 1983, in pertinent part, provides:

> Every person who, under color of any statute, ordinance regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities

> secured by the Constitution and laws, shall
> be liable to the party injured in any action
> at law . . . .

As such, Defendants in this matter could only be liable if: (1) they acted "under the color of" State law, and (2) their actions deprived Plaintiff of some right, privilege, or immunity secured by the Constitution. Monroe v. Pape, 365 U.S. 167 (1961). [emphasis added].

Defendants' conduct, however, did not deprive Plaintiff of any equal protection or due process rights as alleged in his Complaint. Moreover, a promotion is not a property right protected by the Fourteenth Amendment.

## A.  DEFENDANTS DID NOT DEPRIVE PLAINTIFF OF HIS CONSTITUTIONAL RIGHT TO EQUAL PROTECTION.

The Equal Protection Clause of the Fourteenth Amendment directs that all persons similarly situated be treated alike. Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432 (1984). In order to establish a *prima facie* case of discrimination under the Equal Protection Clause, a plaintiff must prove that he is a member of a protected class and that he received different treatment than that received by other similarly-situated individuals. Keenan v. City of Phildelphia, 983 F.2d 459. In other words, he must prove the existence of purposeful discrimination. Id.

In his Complaint, Plaintiff claims that Defendants

discriminated against him in violation of 42 U.S.C. § 1983 because he was not promoted to Sergeant even though he was qualified and eligible for the position. However, this claim must fail as a matter of law because Plaintiff has not offered any evidence to show that his treatment was arbitrary or irrational or that even one similarly situated individual was given the promotion instead. In fact, all of the evidence proffered supports a rational basis for Defendants' actions.

The Borough of Fort Lee is a Civil Service jurisdiction and, as such, is subject to the regulations and procedures established by the New Jersey Civil Service Commission ("Commission") with regard to promotions. (Thomas 14:20-21). It exercises very little independent discretion when determining which employees receive promotions.

According to the Commission, if promotional opportunities are available within the Borough Police Department, the Borough must notify the Commission which, in turn, will direct that notices of these promotional examinations and applications be provided to all eligible employees. N.J.A.C. 4A:4-2.1. Employees seeking promotion must first sit for a test administered by the Commission. N.J.A.C. 4A:4-2.2 & 2.3. Thereafter, the Commission will distribute to the employer a "list of eligibles" consisting of the names of all those applicants who successfully completed the exam. N.J.A.C. 4A:4-

3.1.   The eligible employees are then ranked by the Commission, which gives special consideration to criteria such as score, residency, and Veterans' preference. N.J.A.C. 4A:4-3.2.

When there is a vacancy to be filled, an appointing authority will request a certification of names from the Commission. N.J.A.C. 4A:4-4.1.   Once the Commission has accepted the appointing authority's application for permission to fill the vacancy, it will issue a complete certification of the names of those applicants eligible for a particular position. N.J.A.C. 4A:4-4.2.   If more than one (1) name appears on the certified list of eligibles, the appointing authority may choose any one (1) of the top three (3) candidates ("rule of three") to fill the position.   The appointing authority is not required to chose the first name on the list. N.J.A.C. 4A:4-4.8.

Here, the first time that Plaintiff sat for the Sergeant's test, his name appeared as number three (3) on the list of certified eligibles. (Hernandez 1 148:14-16).   At the time, Officer Krautheim, a female officer, and Officer Zusi, a white male officer, ranked ahead of Plaintiff on the list. (Hernandez 1 149:7-15).   Both were promoted to Sergeant and, as a result, Plaintiff's name was elevated to first on the list.   No additional promotions were made, however, because the Borough instituted a hiring and promotional freeze in February of 2008, approximately seven (7) months prior to the expiration of the

list. (Hernandez 1 150:10-20 & Thomas, 157:16-25 & 158:1-4). Importantly, even if the freeze had not been implemented and the Borough wished to promote another officer to the rank of Sergeant, it would still have been under no obligation to promote Plaintiff because, pursuant to the regulations, it could have chosen the person who, as a consequence of the previous two (2) promotions, now ranked in the number two (2) or number three (3) position. As such, the Borough acted in full accord with the Civil Service Regulations and was under no obligation to promote Plaintiff, even if his name appeared first on the list. However, the fact remains that no officer was promoted from said list as the Borough had chosen not to fill said vacant position due to fiscal reasons.

Once the list expired, Plaintiff sat for the Sergeant's exam a second time. Although he could not remember his exact rank, he testified that his name appeared in either the 8th, 9th or 10th position. (Hernandez 1 150:1-2). Plaintiff acknowledged, however, that even since this list has been in effect, no additional hirings or promotions to the sergeant's position or otherwise have been made due to the hiring and promotional freeze. (AH1 151:21-25 & 152:1-15).

As such, Plaintiff cannot establish that any similarly situated officer received more favorable treatment either before or after the hiring and promotional freeze took affect. And, in

fact, given Plaintiff's less favorable rank on the second examination, had Defendants intended, as Plaintiff alleges, to discriminate against Plaintiff by instituting the freeze, thereby preventing his promotion, it could have, based upon the results of the new exam, lifted the freeze and promoted one of the new top three (3) eligible employees from the list without consequence.

Nonetheless, Defendants' failure to do so further establishes that there was a rational basis for instituting the freeze and that they did not act arbitrarily or irrationally, or deny Plaintiff his right to equal protection in violation of 42 U.S.C. § 1983, by not promoting him.

## B.   DEFENDANTS DID NOT DEPRIVE PLAINTIFF OF HIS CONSTITUTIONAL RIGHT TO DUE PROCESS.

Plaintiff's "failure to promote" claim rests on 42 U.S.C. § 1983, which provides a civil remedy against those who, under the color of state law, deprive others of rights, privileges, or immunities secured by the Constitution and laws of the United States. West v. Atkins, 487 U.S. 42, 48-49 (1988). Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993). The Fourteenth Amendment guarantees an individual due process of law where the state deprives an individual of a constitutionally protected liberty or property interest. Board of Regents v. Roth, 408 U.S. 564, 569 (1972). If no such interest is implicated, then no

process is due the afflicted individual. Id. at 569-570.

To state a due-process claim for denial of a promotion, plaintiff must be able to show that the individual interests he asserts are within the Fourteenth Amendment's protection of "life, liberty or property," and that these interests were denied him without "due process of law." U.S. Const. amend XIV; see also Robb v. City of Philadelphia, 733 F.2d 286, 292 (3d Cir. 1984).

To have a property interest in a benefit that is protected by procedural due process, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Board of Regents v. Roth, supra, at 569-572.

Moreover, property interestes are not generally created by the Constitution. "Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those individuals." Id. at 569-572; Robb, 733 F.2d at 292.

In Pollock v. City of Ocean City, 968 F. Supp 187 (1997), the District Court ruled that the plaintiff therein could not claim any legitimate entitlement to a promotion to deputy chief

of police. Id. at 190. Specifically, the Court stated, "Although plaintiff took the civil service test, scored first, and enjoys preferential treatment as a veteran, he attained no entitlement to the position of deputy chief of police. Id.; see also Grimes v. City of East Orange, 285 N.J. Super. 154, 164, (App. Div. 1995); Schroder v. Kiss, 74 N.J. Super. 229, 240, (App. Div. 1962) (One who successfully passes an examination and is placed on an eligible list does not thereby gain a vested right to appointment. The only benefit inuring to such person is that so long as the list remains in force, no appointment can be made except from that list.)

The Court further reasoned:

> [P]laintiff's relative success on the civil service examination gave him no legitimate claim of entitlement under the Constitution or laws of New Jersey to a promotion to deputy chief of police. Accordingly, plaintiff cannot demonstrate a property interest in a promotion that can form the basis of a Fourteenth Amendment due process claim cognizable under § 1983. If he is to succeed with his due-process claim, therefore, he must show a deprivation of his liberty.

Pollock, supra, at 190.

The Court further analyzed that for an employment action to implicate a Fourteenth Amendment liberty interest, it must: (1) be "based on a charge against the individual that might seriously damage his standing and associations in the community

. . . for example, that he had been guilty of dishonesty, or immorality or, (2) impose on him a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities. Such stigmatizing statement must be disclosed publicly, be false, and have some 'significant bearing on the employee's reputation.'" Id. (internal citations omitted).

The Pollock Court, in finding that no liberty interest was implicated, reasoned:

> Plaintiff's complaint alleges no facts that would suggest that defendants' failure to promote him was based on any charge of dishonesty or immorality, or that defendants placed on him any stigma that foreclosed other job opportunities. Plaintiff's complaint does not, for example, allege that defendants publicly disclosed that he would not be promoted because he was dishonest, incompetent, a racist or a felon.

Id. Similarly, the Complaint in this matter is void of any such allegations as well.

Moreover, the Pollock Court reasoned that even if the plaintiff there could establish a property or liberty interest in a promotion, "he could not show that the extensive administrative procedures available to him under New Jersey law [fell] short of the due process required by the Constitution." Id. at 191. Similarly, here, although available to him, Plaintiff failed to seek redress through either his Union's

negotiated greivance procedure established in the Collective Bargaining Agreement or any other available administrative remedies. The Pollock Court reasoned that "[t]he administrative procedures afforded by the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to 13A-21, and the New Jersey Department of Personnel, N.J.S.A. 11A:2-1 to 2-24, satify the requirements of the Due Process Clause." Matthews v. Eldridge, 424 U.S. 319, 334-35 (1976). As such, the plaintiff's due process claim was dismissed for failure to state a claim upon which relief could be granted. Id. Accordingly, since Plaintiff, here, had the same administrative remedies available to him, yet chose to not to seek relief therein, his claims pursuant to 42 U.S.C. § 1983 should be dismissed as well.

POINT IV

**SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF DEFENDANTS BOROUGH OF FORT LEE, MARK SOKOLICH, AND THOMAS RIPOLI BECAUSE PLAINTIFF HAS FAILED TO MEET HIS BURDEN OF ESTABLISHING THAT DEFENDANTS VIOLATED THE NEW JERSEY LAW AGAINST DISCRIMINATION ("LAD").**

In his Complaint, Plaintiff alleges that Defendants violated the New Jersey Law Against Discrimination ("LAD"), N.J.S.A. 10:5-12 et seq. by refusing to promote him based on his ethnicity. (**Exhibit A**, Complaint at ¶ 41). Specifically, Plaintiff states that he was denied the opportunity to obtain employment and all rights and privileges to which he was entitled as a result of his race, nationality, color, national origin and ancestry. (**Exhibit A**, Verified Complaint at ¶ 46)

The New Jersey Law Against Discrimination was enacted in recognition of New Jersey's clear public policy against discrimination in the workplace. Carmona v. Resorts Int'l Hotel, Inc., 189 N.J. 354, 370. Under the LAD, New Jersey has adopted the tests for a prima facie disparate treatment case that were promulgated to enforce Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to e-17. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 81-84 (1978) (adopting the McDonnell Douglas burden shifting framework for analysis of NJLAD cases); see also Fuentes v. Perskie, 32 F. 3d 759, 763 (3d Cir. 1994).

Under McDonnell Douglas, the plaintiff has the burden of producing, by a preponderance of the evidence, a *prima facie* case of discrimination based on national origin. To do so, plaintiff must show: (1) that he is within a protected group, (2) that he was qualified for the position in question, (3) that he suffered an adverse employment action, (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. McDonnell Douglas, 411 U.S. at 802.

The McDonnell Douglas test can be adjusted when it is inapplicable to a specific factual situation that arises in a case. Peper, supra, 77 N.J. at 83-84. In a case asserting failure to promote, a plaintiff must demonstrate that: (1) he is a member of a protected class, (2) he applied and was qualified for a position for which employer was seeking applicants, (3) he was rejected despite adequate qualification, and (4) after his rejection, the position was offered to someone with equivalent or lesser qualifications who was not a member of the claimant's protected class. Pepe v. Rival Co., 85 F. Supp 2d 349, 365 (D.N.J. 1999), aff'd, 254 F.3d 1078 (3d Cir. 2001); Greenberg v. Camden County Voc. & Tech Sch., 310 N.J. Super. 189, 198 (App. Div. 1998).

Thus, in order for Plaintiff to establish a *prima facie* case of discrimination in this matter, he must present evidence

that a less or equally qualified member of a non-protected class was, in fact, offered the promotion. If Plaintiff can do so successfully, then the burden shifts to the Borough to "articulate some legitimate, nondiscriminatory reason" for the action. McDonnell Douglas, supra, at 802; see also Erickson v. Marsh & McLennan Co., 117 N.J. 539,550 (1990). A defendant "satisfies its burden of production by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes, 32 F. 3d at 763. The defendant "need not prove that the tenured reason actually motivated its behavior as the ultimate burden of proving intentional discrimination always rests with the plaintiff." Id.

Once a defendant satisfies his "relatively light burden," the burden shifts back to the plaintiff who must then show that the defendant's proffered reason or reasons are a pretext for discrimination. Id.

Here, Plaintiff cannot make out a *prima facie* showing of discrimination sufficient to shift the burden to Defendants because no lesser or equally qualified member of a non-protected class was offered a promotion. Assuming arguendo that the Plaintiff meets his burden so that the Borough would need to profer and articulate a non-discriminatory reason for not promoting Plaintiff, the fact remains that the Borough,

forseeing a fiscal crisis in the Borough, passed a resolution imposing a promotion/hiring freeze. No officer was promoted once the hiring freeze took affect. As such, the Borough did not violate the LAD by not promoting Plaintiff.

<u>POINT V</u>

**SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF DEFENDANTS MARK SOKOLICH AND THOMAS RIPOLI BECAUSE THEY ARE ENTITLED TO QUALIFIED IMMUNITY.**

Local government, independent capacity defendants are entitled to qualified immunity. <u>Harlow v. Fitzgerald</u>, 457 <u>U.S.</u> 800 (1982). In order to maintain an action against an officer for a violation of the Federal Civil Rights statutes, a plaintiff must plead and prove that the officer has made a mistake so egregious that no reasonable officer could have condoned such an action. This legal protection was examined and clarified last year in the Supreme Court decision of <u>Pearson v. Callahan</u>, 129 <u>S. Ct.</u> 808, 815 (U.S. 2009). Specifically, the Court articulated:

> **The doctrine of qualified immunity protects government officials** "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Qualified immunity balances two important interests— the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. **The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."** <u>Groh v.</u>

> *Ramirez*, 540 U.S. 551, 567, 124 S. Ct. 1284,
> 157 L. Ed. 2d 1068 (2004) (Kennedy, J.,
> dissenting) (citing *Butz v. Economou*, 438
> U.S. 478, 507, 98 S. Ct. 2894, 57 L. Ed. 2d
> 895 (1978) (**noting that qualified immunity
> covers "mere mistakes in judgment, whether
> the mistake is one of fact or one of law"**))

*Pearson v. Callahan*, 129 S. Ct. 808, 815 (U.S. 2009) [emphasis added].

In overruling the established test for such immunity as laid out in *Saucier v. Katz*, 533 U.S. 194 (2001), the Court reasoned that the difficult question of whether a civil right had been violated, if such a determination had to be made at the onset, was such an onerous task at an early state of litigation, that judges should be allowed to first determine whether such a right was clearly established. Under current law, either of the two steps of the *Saucier* analysis may be addressed first, however both must be satisfied in order for Qualified Immunity to attach. The analysis, which can now be performed in any order, mandates:

> First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

<u>Pearson</u> at 816. [internal citations omitted].

Here, Defendants Sokolich and Ripoli satisfy both prongs of the analysis, regardless of order. First, there was no Constitutional right violated as there was no proof that plaintiff was discriminated against. Moreover, Plaintiff had no cognizable property interest in a promotion such that Fourteenth Amendment Due Process protections would apply. Nonetheless, even assuming, *arguendo*, that Plaintiff had a cognizable right to a promotion, this right is not so clearly established that the Chief and/or the Mayor should have known of its existence, as this issue required significant analysis by the Court in <u>Pollock</u> before a definitive conclusion could be reached.

As such, Defendants Sokolich and Riploli are entitled to qualified immunity and any claims against them personally should be dismissed.

## POINT VI

### PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES

Plaintiff's Complaint seeks punitive damages against all Defendants for violations of the New Jersey Law Against Discrimination ("LAD") and 42 U.S.C. § 1983. Plaintiff, however, has failed to demonstrate the proofs necessary to support a claim for punitive damages against any of the Defendants on these claims.

### A. Plaintiff is not entitled to Punitive Damages under the LAD.

Pursuant to N.J.S.A. 2A:15-5.12, the elements necessary to prove a punitive damages claim are as follows: 1) the likelihood, at the relevant time, that serious harm would arise from the defendant's conduct, 2) the defendant's awareness or reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct, 3) the conduct of the defendant upon learning that its initial conduct would likely cause harm, and 4) the duration of the conduct or any concealment of it by the defendant. N.J.S.A. 2A:15-5.12.

Punitive damages under LAD are to be awarded only in "exceptional" cases where a defendant's conduct is "especially egregious." Delli Santi v. CNA Ins. Cos., 88 F.3d 192 (3d Cir. 1996); Cavuoti v. N.J. Transit Corp., 161 N.J. 107, 113 (1999);

Catalane v. Gillian Instrument Corp., 271 N.J. Super. 476, 500-
01 (App. Div. 1994)(holding that "punitive damages are only to
be awarded in exceptional cases even where the LAD has been
violated"). Something more than the commission of a tort is
required for punitive damages. Levinson v. Prentice-Hall, Inc.
868 F.2d 558 (3d Cir. 1989). DiGiovanni v. Pessel, 55 N.J. 188,
190 (1970). As with other intentional torts, proof of
intentional discrimination alone is not enough. Catalane, supra,
at 500. In order to justify an award of punitive damages, there
must be "actual malice." Rendine v. Pantzer, 141 N.J. 292, 314
(1995). The defendant does not have to recognize that his
conduct is extremely dangerous, but a reasonable person must
know or should know that the actions are sufficiently dangerous.
Smith v. Whitaker, 160 N.J. 221 (1999).

Further, although claims under LAD are exempt from the cap
on punitive damages established by the Punitive Damages Act, any
punitive damages awarded would be limited by substantive due
process. Mogull v. CB Commercial Real Estate Group, Inc., 162
N.J. 449, 473-74 (2000).

In the instant matter, Plaintiff has not met his burden of
establishing that Plaintiff was discriminated against by any of
the Defendants. As such, any award of punitive damages would be
inappropriate because there is no evidence whatsoever that
Defendants, Borough of Fort Lee, Mark Sokolich and/or Thomas

Ripoli, acted with evil motive or intent or were reckless or callously indifferent to Plaintiff's rights sufficient to sustain Plaintiff's claim for punitive damages. Instead, the record is replete with evidence to the contrary.

First, promotions in the Fort Lee Police Department are governed by the rules and regulations established by the Civil Service Commission. (PT 14:20-21). Thus, candidates for promotion are selected based primarily on merit and not favoritism. Additionally, the Borough clearly did not discriminate against Plaintiff by not promoting him because it instituted a hiring/promotional freeze which precluded promotion of any member of the police department. Moreover, of all the Hispanic officers deposed in this matter, not one testified that they felt they were discriminated against or unfairly disciplined by any of the Defendants. Even Plaintiff, himself, testified that no one from the Borough including the Chief and/or the Mayor, said anything to Hernandez with regard to his ethnicity (160:12-16).

Additionally, although not specifically pled, damages for pain and suffering may be recoverable under LAD. N.J.S.A. 10:5-3. In his Complaint, Plaintiff alleges that as a result of Defendants' actions, he "has been damaged and will continue to be damaged."(See, Verified Complaint at ¶¶ 39, 48, 58, 68). During his deposition, Plaintiff testified that he has been

seeing a mental health professional since filing this Complaint. Importantly, damages for stress of litigation are not recoverable. Picogna v. Bd. of Educ. of Cherry Hill, 143 N.J. 391 (1996).

## B.  Plaintiff is not entitled to punitive damages for violations of 42 U.S.C. § 1983.

The United States Supreme Court has held that punitive damages cannot be imposed against a public entity for violations of 42 U.S.C. § 1983. Newport v. Fact Concerts, Inc., 453 U.S. 247, 250 (1981). Additionally a plaintiff may not recover punitive damages when he sues an official in his or her official capacity, since the damages will ultimately be paid by the municipality. See Pica v. Sarno, 907 F. Supp. 795, 805 (D.N.J. 1995).

In Monell, the United States Supreme Court explained that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell, supra, 436 U.S. at 690 n.55. Our courts have held that as long as the government entity receives notice and an opportunity to respond, an official capacity suit is to be treated as a suit against the entity and "a plaintiff seeking to recover on a damages judgment in an official capacity suit must look to the governmental entity itself." Brandon v. Holt, 469 U.S. 464 (1985). The United States Supreme Court has

specifically indicated that a jury may assess punitive damages against a public employee defendant in his individual capacity in cases brought pursuant to 42 U.S.C. § 1983 only where a defendant is motivated by "evil motive or intent" or acts with "reckless or callous indifference to the federally-protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983).

In the matter at bar there can be no punitive damages assessed against any of the Defendants as to Plaintiff's State law claims or as to Plaintiff's claim under 42 U.S.C. § 1983 or § 1985. First, punitive damages cannot be awarded against a public entity with regard to claims for constitutional violations, pursuant to the Untied States Supreme Court's holding in Newport. Additionally, there is no evidence that Defendants Sokolich or Ripoli acted with evil motive or intent or were reckless or callously indifferent to Plaintiff's rights to sustain a claim for an award of punitive damages.

Based upon the forgoing this Court should grant summary judgment in favor of all of the Defendants with regard to Plaintiff's claims for punitive damages.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that their Motion for Summary Judgment be granted.

Respectfully submitted,
SCARINCI HOLLENBECK, LLC
Attorneys for Defendants


*/s/ MITCHELL B. JACOBS, ESQ.*


Dated: March 26, 2010