SCARINCI HOLLENBECK
ATTORNEYS AT LAW
1100 VALLEY BROOK AVENUE
P.O. BOX 790
LYNDHURST, NEW JERSEY 07071-0790
Telephone: (201) 896-4100
Attorneys for Defendants,
Borough of Fort Lee, Thomas O. Ripoli and
Mark Sokolich
Our File No. 10112.2900

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **ANTONIO HERNANDEZ**<br><br>**Plaintiff,**<br><br>v.<br><br>**BOROUGH OF FORT LEE**, **THOMAS O. RIPOLI**, individually and as Chief of Police for the Borough of Fort Lee, **MARK SOKOLICH**, individually and as Mayor of the Borough of Fort Lee, **JOHN DOE AND JANE DOES 1-10** (fictitious individuals presently unidentifiable) and **ABC CORPORATIONS** 1-10 (fictitious corporations or other business entities presently unidentifiable),<br><br>**Defendants.** | Civil Action No.: 2:09-cv-01386 (FSH)<br>Honorable Faith S. Hochberg, U.S.D.J.<br><br><br>**STATEMENT OF UNDISPUTED**<br><br>**MATERIAL FACTS**<br><br><br>**DOCUMENT ELECTRONICALLY FILED** |

1.     Antonio Hernandez ("Plaintiff" or "Hernandez") is a Hispanic male and a

Borough of Fort Lee Police Officer. (**Exhibit A** Plaintiff's Complaint ¶1)

2.      The Borough of Fort Lee ("Defendant" or "Fort Lee") is a municipality in New Jersey, located in Bergen County.

3.      Fort Lee is a Civil Service municipality whereby it is in the town's discretion to establish a table of organization and make such promotions in accordance with the table of Organization   (**Exhibit B,** Chapter 90-2 of the Fort Lee Code "Formation and Rank")(*See also* **Exhibit C,** Deposition of Thomas Ripoli, Part I, 146:16-18).

4.      Fort Lee's local government is made up of a Mayor and Borough Council consisting of six council people, one of whom is the Council President (**Exhibit D,** Deposition of Peggy Thomas, 17:6-18:11).

5.      Peggy Thomas is the Borough Administrator. (**Exhibit D,** Deposition of Peggy Thomas, 6:8-9).

6.      The Borough Administrator is responsible for the day to day operations of the Borough and reports to the Mayor and Council. (**Exhibit D,** Deposition of Peggy Thomas, 7:14-15).

7.      All promotions in the Fort Lee Police Department are subject to Civil Service Rules and are formalized by the New Jersey Civil Service Commission. (**Exhibit D**, Deposition of Peggy Thomas 14:20-21.)

8.      Borough Ordinance # 2005-1, adopted January 27, 2005, amended the Table of Organization and states that "The Police Department Table of Organization shall consist of the following positions: (1) Police Chief; (2) Deputy Chief; (0) Inspectors; (5) Captains; (9) Lieutenants; (12 Sergeants); (83) Police Officers." (**Exhibit E** Borough of Fort Lee Ordinance #2005-1).

9.      Borough Ordinance # 2007-50, adopted November 8, 2007, amended the Table of Organization and states that "The Police Department Table of Organization shall consist of the following positions: (1) Police Chief; (2) Deputy Chief; (0) Inspectors; (5) Captains; (10) Lieutenants; (11 Sergeants); (83) Police Officers." (**Exhibit F** Borough of Fort Lee Ordinance #2007-50).

10.     Borough Ordinance # 2009-3, adopted January 29, 2009, amended the Table of Organization and states that "The Police Department Table of Organization may consist of the following positions: (1) Police Chief; (1) Deputy Chief; (0) Inspectors; (5) Captains; (10) Lieutenants; (11 Sergeants); (81) Police Officers." (**Exhibit G** Borough of Fort Lee Ordinance #2009-3).

11.     The Table of Organization has been reduced due to the financial constraints restricting the Borough's spending. (**Exhibit D,** Deposition of Peggy Thomas, 116:6-11, 21-24).

12.     It is within the Borough of Fort Lee's discretion to determine whether to make a promotion. (**Exhibit D,** Deposition of Peggy Thomas, 190:17-21).

13.     Promotions are made in a formalized process. (**Exhibit D**, Deposition of Peggy Thomas, 14:20-22).

14.     The Borough Administrator does not have any authority to make promotions. For promotions of non-civilian employees, the Borough Administrator receives requests from department heads and transmits the request to the Mayor and Council. (**Exhibit D**, Deposition Peggy Thomas, 14:8-15).

15.     If a position in the Table of Organization of the Borough Police Department needs to be filled, the Chief of Police may make a request to the Mayor and Counsel that a

promotion be made to fill the position. (**Exhibit D**, Deposition of Peggy Thomas, 97:17-98:11). (*See also* **Exhibit H,** Deposition of Antonio Hernandez  57:4-58:5).

16.     When a request for promotion is made the Borough Administrator requests a certified "list of eligibles" from the New Jersey Department of Civil  Service. The Borough must establish that there is a current list in place. (**Exhibit D**, Deposition of Peggy Thomas, 100:8-21).

17.     The Borough Council votes to determine whether an open position should be filled by an eligible candidate. (**Exhibit D**, Deposition Peggy Thomas, 112:11-113:6).

18.     The Civil Service "Rule of Three" provides that if more than one (1) name appears on the certified list of eligibles, the appointing authority may choose any of the top three (3) candidates to fill the position.  The appointing authority is not required to choose the first name on the list. (**Exhibit I,** N.J.A.C. 4A:4-4.8).

19.     The Borough Council votes to make the ultimate decision as  whether to promote someone from the list of eligibles. (**Exhibit D**, Deposition Peggy Thomas, 112:1-7).

20.     During the first work session in January 2008, the Council began discussion regarding the Borough hiring freeze. (**Exhibit Z,** Deposition of Harvey Sohmer  41: 24).

21.     On February 28, 2008, due to the financial crisis, the Borough of Fort Lee, by vote of the Council approved  a resolution to institute a hiring freeze. (**Exhibit D**, Deposition of Peggy Thomas, 157:9-18).

22.     The Resolution freezing employment with the Borough states that:

WHEREAS, the Mayor and Council of the Borough of Fort Lee recognize the severe fiscal constraints now facing the Borough in its Budget formation and the monetary burden on the Borough's taxpayers; and

WHEREAS, the Mayor and Council of the Borough of Fort Lee agree that a hiring freeze is necessary due to said severe fiscal constrains.

NOW, THEREFORE, Be It Resolved by the Mayor and Council of the Borough of Fort Lee, in the County of Bergen, State of New Jersey as follows:

(1) The Borough of Fort Lee will not hire any new employees (seasonal employees excepted).
(2) The Borough of Fort Lee will not fill positions when an Employee leaves the employment of the Borough.
(3) The Borough of Fort Lee will not grant any voluntary raises that are not contractually required.

BE IT FURTHER RESOLVED that this resolution will take effect immediately and will remain in full force and effect until it is resolved to the contrary.

(**Exhibit J,** Borough Resolution, Dated February 28, 2008).

23.     The hiring freeze resolution froze promotions as well as new hires. (**Exhibit K,** Deposition of Mayor Mark Sokolich, 107:2-18) (*See also* **Exhibit H**, Deposition Antonio Hernandez, Part II 150:3-8) (*See also* **Exhibit C,** Deposition of Thomas Ripoli Part II 123:1-21).

24.     This resolution, freezing employment, created a situation in which the Borough would not hire any new employees unless there was an express need for reasons of public safety. (**Exhibit D**, Deposition of Peggy Thomas, 157:16-158:4).

25.     The hiring freeze resulted in understaffing in the Department of Public Works and the Building Department due to departing employee's positions remaining unfilled after the freeze went into effect. (**Exhibit D,** Deposition of Peggy Thomas, 160:3-5).

26.     The Police Department is considered to be overstaffed with personnel. (**Exhibit D**, Deposition of Peggy Thomas, 160:16-23).

27.     Since the hiring freeze was instituted the Borough Council has maintained that the Police Department should be reduced in size contra to the Police Chief, Thomas Ripoli's opposition to any reduction. (**Exhibit D**, Deposition of Peggy Thomas, 183:3-7).

28.     Since the hiring freeze, two officers have retired and have not been replaced because of the hiring freeze. (**Exhibit C,** Deposition of Chief Thomas Ripoli Page 123, Line 15-21.

29.     Since the hiring freeze was instituted in February 2008 there have not been any promotions within the Police Department. (**Exhibit D**, Deposition of Peggy Thomas, 167: 6-9).

30.     Mark Sokolich is the current mayor of the Borough of Fort Lee. He was elected in November 2007 and sworn in  January 2008 replacing Mayor Jack Alter.  (**Exhibit K** Deposition of Mayor Mark Sokolich, 27:18-28, 35: 18-19).

31.     The Mayor convenes and is the chairperson of the Borough's council meetings. In this position Mayor Sokolich establishes protocol, generates an agenda and officiates council meetings. (**Exhibit K** Deposition of Mayor Mark Sokolich, 43:9-12).

32.     The Mayor does not vote except in the event of a tie between council members. (**Exhibit K** Deposition of Mayor Mark Sokolich, 43:17-21).

33.     Within the Borough of Fort Lee the Chief of Police is delegated the authority to run the day-to-day operations and administer the day-to-day business of the department. The Police Chief supervises inferior officers and may discipline officers within his discretion limited by certain exceptions within the exclusive purview of the Mayor and Council. During Mayor Sokolich's tenure there has not been such a situation where the discipline of a police officer came before the Council. (**Exhibit K** Deposition of Mayor Mark Sokolich, 55:10-23).

34.    If a police officer should feel aggrieved by discipline received that officer may appeal the discipline through the grievance process. (**Exhibit O,** Collective Bargaining Agreement).

35.    The Mayor is not generally notified of instances of discipline, workers compensation claims or attendance issues arising out of the Police Department. (**Exhibit K,** Deposition of Mayor Mark Sokolich, 65:11-25, 67:4-12).

36.    The Mayor was made aware that Officer Antonio Hernandez had been disciplined for non-specified infractions a few times by Police Chief Thomas Ripoli after the suit herein was instituted by Officer Hernandez. (**Exhibit** K, Deposition of Mayor Mark Sokolich, 62:23-64:11).

37.    Chief Ripoli discussed Officer Hernandez's workers' compensations claims with the mayor subsequent to the filing of Officer Hernandez's complaint. (**Exhibit K** Deposition of Mayor Mark Sokolich 69:3-16).

38.    The Mayor had and has limited interaction with Officer Hernandez throughout his tenure in the Borough. (**Exhibit K** Deposition of Mayor Mark Sokolich, 77:14-78:11).

39.    The Council discussed the hiring freeze and promotional freeze as it pertained to the Police Department. (**Exhibit K** Deposition of Mayor Mark Sokolich, 145:25-146:7).

40.    Mayor Mark Sokolich was uncertain who Antonio Hernandez was until the instant lawsuit was filed. Mayor Sokolich had to refer to a poster of the Borough police officers, styled as a baseball lineup, in order to verify who Antonio Hernandez in fact was. (**Exhibit K,** Deposition of Mayor Mark Sokolich, 76:11-77:17).

### CHIEF THOMAS O. RIPOLI

41.     Since the resolution freezing salary expenditures, Resolution of February 28, 2008, two police officers have retired creating two openings in the Table of Organization that have remained unfilled. There are currently 107 sworn officers and two unfilled vacancies in the Fort Lee Police Department. There are  109 positions created by the Table of Organization. (**Exhibit C,** Deposition of Thomas Ripoli, Part I, 122:22-123:25).

42.     During prior administrations vacant positions in the table of organization have remained unfilled. (**Exhibit C,** Deposition of Thomas Ripoli, Part I, 237:15-21).

43.     Overtime is based on a rotation that is managed by computer. The rotation is not based on seniority. If an officer is to refuse overtime he is placed on the bottom of the randomly generated list. (**Exhibit C,** Deposition of Thomas Ripoli, Part I, 107:11-25).

### RETIRED OFFICER GARY MOLETA

44.     Gary Moleta is Hispanic (**Exhibit L,**  Deposition of Gary Moleta 9:15-17).

45.     Moleta was hired as a police officer by the Borough of Fort Lee in April 1981. (**Exhibit L,** Deposition of Gary Moleta16:5).

46.     Moleta served on the Borough's Police Department for approximately 23 years until he voluntarily retired. (**Exhibit L,**  Deposition of Gary Moleta 16:24).

47.     Moleta retired with the rank of Lieutenant. (**Exhibit L,** Deposition of Gary Moleta17:12).

48.     Moleta received no major discipline while he was a member of the Fort Lee Police Department. (**Exhibit L,**  Deposition of Gary Moleta 18:20).

49.     Moleta had a good relationship with Chief Ripoli (**Exhibit L,**  Deposition of Gary Moleta 25: 18).

{00555789.DOC}

50.     Moleta was a life long family friend of Officer Hernadez's wife. (**Exhibit L,** Deposition of Gary Moleta 42:16)

51.     Moleta assisted Hernandez in transferring from the City of Paterson Police Force to the Fort Lee Police Force (**Exhibit L,** Deposition of Gary Moleta 43:4).

52.     Moleta has heard other supervisors or officers call Officer Hernandez arrogant and a "Worker's Compensation Abuser" (**Exhibit L,** Deposition of Gary Moleta 49:5-6).

53.     Moleta never heard former Chief Tessaro make any discriminatory remarks or comments about Hernandez or other Hispanic Officers. (**Exhibit L,** Deposition of Gary Moleta 58:25).

54.     Moleta has never heard Chief Ripoli make any discriminatory comments (**Exhibit L,** Deposition of Gary Moleta 59:3)

55.     Regarding Plaintiff being disciplined as a result of events, which involved the Plaintiff running into a car being driven by Officer Ordonez at the Red Oak Diner, Moleta testified that "there have been many events and probably similar events too" where officers had been disciplined. (**Exhibit L,** Deposition of Gary Moleta 65:16-66:18).

56.     When there is a vacant position in the table of organization the promotion was not necessarily made within even several months of the position opening. (**Exhibit L,** Deposition of Gary Moleta 76:23-77:2).

57.     Promotions are not made immediately, the time frame for making promotions was not and is not defined in any way. The timing of a promotion is based on acceptance of the Mayor and Council, which has other business to attend to. (**Exhibit L,** Deposition of Gary Moleta 77: 10-17).

58.    There have been situations where vacant positions in the table of organization have remained unfilled for several years. (**Exhibit L,** Deposition of Gary Moleta 77:10-17).

59.    An opening remained unfilled for several years when Officer Keith Bendul, a Caucasian male, was number one on the Civil Service List. (**Exhibit L,** Deposition of Gary Moleta 77:18-78:7).

60.    No officer has ever expressed a concern to Officer Moleta that they would be retaliated against if they were to report certain conduct. (**Exhibit L,** Deposition of Gary Moleta 93:7-10).

61.    Hundreds of investigations whether done through internal affairs or otherwise have taken place during Officer Moleta's 23 years of service at the Borough's police department. (**Exhibit L,** Deposition of Gary Moleta 99:11-19).

62.    It is not unusual for police officers to visit injured police officers. (**Exhibit L,** Deposition of Gary Moleta 108: 2-4)

63.    Officer Hernandez was brought into the Fort Lee Police Department upon the recommendation of Officer Moleta. (**Exhibit L,** Deposition of Gary Moleta 110:16-111:6).

64.    Between 2000 and 2005, Officer Moleta did not hear any superior officers make any derogatory comments toward any Hispanic police officers. (**Exhibit L,** Deposition of Gary Moleta 116:22-117:5).

65.    The Borough has delayed promotions for economic reasons. (**Exhibit L,** Deposition of Gary Moleta 120:11-121:9; 121:24-122:4).

66.    Moleta asked Officer Hernandez for examples of how he was being discriminated against and Plaintiff did not provide him with any examples. (**Exhibit L,** Deposition of Gary Moleta 130:8-10).

67.    Moleta and Officer Hernandez are like family. (**Exhibit L,** Deposition of Gary Moleta 130:8-10).

68.    Not every police officer who wants to be assigned to ESU is in fact placed there. (**Exhibit L,** Deposition of Gary Moleta 134:9-21).

69.    At the time of Moleta's retirement he was at the highest rank for which he was eligible. (**Exhibit L,** Deposition of Gary Moleta 136:10-12).

70.    During Moleta's tenure on the police force no other Hispanic officer ever told Moleta that he or she felt that he or she was being unfairly treated because they were Hispanic. (**Exhibit L,** Deposition of Gary Moleta 138:6-15; 139:10-13).

71.    Chief Tessaro would not have tolerated discriminatory treatment within the force. This policy continued when Ripoli became Chief. (**Exhibit L,** Deposition of Gary Moleta 135: 9-25).

## OFFICER KEVIN KOSUDA

72.    Officer Kevin Kosuda is the president of the union  and as a function of his position he may file a grievance on behalf of officers. (**Exhibit M,** Deposition Part II of Kevin Kosuda 12:17-22).

73.    Kevin Kosuda  has held this position since June 2006. (**Exhibit M** Deposition Part I of Kevin Kosuda, 10:16-19.)

74.    Prior to his position as President, Officer Kosuda was a member of the Executive Board of the PBA, as First Vice President, Second Vice President and a Trustee. (**Exhibit M** Deposition Part I of Kevin Kosuda, 10:20-25).

75.    As PBA President Officer Kosuda represents the Officers of the union if issues arise in the workplace. (**Exhibit M** Deposition Part I of Kevin Kosuda, 14:6-15:4).

76.    Officer Kosuda  represents officers in matters concerning disciplinary issues approximately once a month. (**Exhibit M** Deposition Part I of Kevin Kosuda16:19-17:11).

77.    Officicer Kosuda feel that Hernadez is often treated differently because he is not well liked by the "upper echelon of [the] Department." (**Exhibit M** Deposition Part I of Kevin Kosuda 46:23-47:90.).

78.    Officer Kosuda has been involved in approximately ten grievances since he became the President of the PBA. (**Exhibit M** Deposition Part I of Kevin Kosuda 107:16-108:6).

79.    Officer Hernandez is not well liked by senior officers due to Plaintiff's "stepp[ing] on [the] toes of people that have been [at the department] for a long time." (**Exhibit M** Deposition II of Kevin Kosuda 11:1-14, 30:18-19).

80.    There have been periods of time in the past where the Table of Organization was not completely filled. Officer Kosuda addressed Chief Ripoli on the issue of filling the Table of Organization. (**Exhibit M** Deposition Part I of Kevin Kosuda 131:20-133:13).

## OFFICER ANTONIO HERNANDEZ

81.    Officer Hernandez joined the Fort Lee Police Department through the Intergovernmental Transfer Program, which was designed for municipalities to fill deficiencies within their organization. (**Exhibit H,** Deposition of Antonio Hernandez Part I 98:6-21). (see also **Exhibit N,** Memorandum dated 10/11/2000, "Notice of Approval for Transfer).

82.    When Officer Hernandez joined the FLPD Tessaro was Chief. Hernandez has served under two Chiefs, Tessaro and Ripoli in Fort Lee. (**Exhibit H,** Deposition of Antonio Hernandez Part I, 146:5-12).

83.    In order become eligible for a promotion an officer must obtain and complete an application, which is processed by the Civil Service Commission. The officer is later notified of a test date and location. An officer must then take the test. (**Exhibit H** Deposition of Antonio Hernandez Part I, 147:7-22).

84.    The results of a Civil Service test are released approximately three to four months after a test is held. (**Exhibit H** Deposition of Antonio Hernandez Part I, 147:24-148:5).

85.    Officer Hernandez has taken the promotional exam for a sergeant's position twice. The first time he was ranked third on the list. On the second list he was ranked somewhere below eighth. Officer Hernandez is uncertain of his exact place on the current promotional list of eligibles on the second list. (**Exhibit H** Deposition of Antonio Hernandez Part I, 148:8-21).

86.    Officers Krautheim and Zusi were ranked number one and two on the promotional list on which Officer Hernandez was ranked third. (**Exhibit H** Deposition of Antonio Hernandez Part I, 149:7-12).

87.     Officers Krautheim and Zusi were promoted and Officer Hernadez became first on the list of eligibles. (**Exhibit H** Deposition of Antonio Hernandez Part I, 149:13-14).

88.     The original list of eligibles on which Plaintiff was ranked third and then first has expired. (**Exhibit H** Deposition of Antonio Hernandez Part I, 149:23-24).

89.     The Borough's hiring and promotional freeze when into effect approximately seven months before the list of eligibles on which Hernandez was listed as first was to expire. (**Exhibit H** Deposition of Antonio Hernandez Part I, 150:10-20).

90.     Since he hiring freeze was put into effect no police officers have been promoted in the Borough. (**Exhibit H** Deposition of Antonio Hernandez Part I, 154:9-15; 160:16-20).

91.     At the time the hiring freeze was instituted a reduction in overtime was announced. (**Exhibit H** Deposition of Antonio Hernandez Part I, 151:21-152:15).

92.     Gary Moleta is "a very, very close family friend." (**Exhibit H** Deposition of Antonio Hernandez Part II, 6:23-24).

93.     Hernandez has had several incidents documented as discipline in his personnel file. In his deposition testimony, Hernandez did not recall the following events:

  a.     May 16, 2001 – Being late for municipal court (**Exhibit H** Deposition of Antonio Hernandez Part II, 8:17-24)
  b.     May 30, 2001 – being late for municipal court (**Exhibit H** Deposition of Antonio Hernandez Part II, 8:25-9:2)
  c.     August 9, 2001 – being counseled regarding working a side job and then calling in sick (**Exhibit H** Deposition of Antonio Hernandez Part II, 9:3-6)
  d.     January 29, 2002 – a collision (**Exhibit H** Deposition of Antonio Hernandez Part II, 9:7-13)
  e.     February 2, 2003 – a demeanor civilian complaint being lodged against Hernandez. (**Exhibit H** Deposition of Antonio Hernandez Part II, 9:14-18)
  f.     April 7, 2003 – received counseling and a performance notices regarding failure to report for duty with proper equipment. (**Exhibit H** Deposition of Antonio Hernandez Part II, 9:19-24).

{00555789.DOC}

    g.     June 9, 2003 – being absent without leave from court, getting a written reprimand (**Exhibit H** Deposition of Antonio Hernandez Part II, 9:25-10:10)

    h.     August 2003 – deemed at fault for a collision (**Exhibit H** Deposition of Antonio Hernandez Part II, 11:1-4).

    i.     August 4, 2003 – was counseled for failing to properly account for police equipment (**Exhibit H** Deposition of Antonio Hernandez Part II, 11:5-9)

    j.     August 15, 2003 – late for duty (**Exhibit H** Deposition of Antonio Hernandez Part II, 11:10-13)

    k.     May 2004 – being counseled on responsibilities while on a traffic post (**Exhibit H** Deposition of Antonio Hernandez Part II, 11:14-12:5)

    l.     June 5, 2004 – a civilian misdemeanor complaint being sustained against him and receiving counseling and a performance notice (**Exhibit H** Deposition of Antonio Hernandez Part II, 12: 6-10)

    m.     June 10, 2004 – being absent without leave from court and receiving a verbal reprimand (**Exhibit H** Deposition of Antonio Hernandez Part II, 12: 15-19).

    n.     July 2006 – being counseled on proper procedure to submit summonses (**Exhibit H** Deposition of Antonio Hernandez Part II, 13:20-24).

94.    On June 28, 2003  Hernandez failed to report a collision with another' officer, receiving a one day suspension without pay and three months suspension from ESU. (**Exhibit H** Deposition of Antonio Hernandez Part II, 10: 15-10:25)

95.     Hernandez received a written reprimand in August 2004 for failing to notify FLPD of a change of address (**Exhibit H** Deposition of Antonio Hernandez Part II, 12:20-24).

96.    Hernandez was counseled on appearance and court procedure in August of 2004. (**Exhibit H** Deposition of Antonio Hernandez Part II, 13:4-7).

97.     On  May 31, 2006, Hernandez received discipline for a  minor rule infraction for failing to properly follow police pursuit guidelines causing a collision with another police agency, receiving a three day suspension without pay and a six-month suspension from ESU. (**Exhibit H** Deposition of Antonio Hernandez Part II, 13:8-16).

98.   In October 2007 Hernandez' patronage of a known drug dealer's business was "discussed." (**Exhibit H** Deposition of Antonio Hernandez Part II, 14:1-10).

99.   On April 14, 2002  Hernandez requested to be on the ESU team by e-mail addressed to Captain Roy Bortolus. (**Exhibit H** Deposition of Antonio Hernandez Part II, 21:7-22:4).

100.   Hernandez  was listed as a member of the ESU on May 1, 2002. (**Exhibit H** Deposition of Antonio Hernandez Part II, 22:10-23).

101.   Hernandez was placed on ESU approximately 2 weeks after his request. (**Exhibit H** Deposition of Antonio Hernandez Part II, 22:24-23:12).

102.   Hernandez served on the ESU sporadically throughout his employment with the Borough (**Exhibit H** Deposition Part I of Antonio Hernandez, 124:14-23).

103.   After Hernandez's first injury he returned to the ESU after receiving medical clearance. After his second injury Hernandez did not request to be returned to the team. (**Exhibit H** Deposition Part I of Antonio Hernandez, 130:4-131:4).

104.   Officer Hernandez currently receives "top pay" for a patrol officer. (Deposition Part I of Antonio Hernandez, 131:18-23).

105.   Officer Hernandez currently makes a base salary of $90,910.00. (**Exhibit O**, Collective Bargaining Agreement.)

106.   Hernandez was suspended as the result of an incident in which during a pursuit he was directed to discontinue and a collision occurred between his vehicle and a vehicle from Port Authority, the pursuit involved an officer being injured (**Exhibit H** Deposition of Antonio Hernandez Part II, 36:6-38-4).

107.  Hernandez has not grieved any disciplinary action or instituted any administrative complaints prior to the filing of his civil complaint. (**Exhibit H** Deposition of Antonio Hernandez Part I, 41:11-15, 97:6-14, 151:5-152:17).

108.  There has been no other incident in which a person  of a protected class was eligible for a promotion but not promoted. (**Exhibit H** Deposition of Antonio Hernandez Part II, 62:18-63:1).

109.  Hernandez does not have a clear understanding of how overtime assignments are made. (**Exhibit H** Deposition Part I of Antonio Hernandez, 132:2-135:5).

110.  Hernandez has received overtime assignments in the past year (**Exhibit H** Deposition of Antonio Hernandez Part II, 126:13-18).

111.  Hernandez has recently started "declining" overtime "because ever since the lawsuit, I tried to stay away from work." (**Exhibit H** Deposition of Antonio Hernandez Part II, 129:21-25). (*see also* **Exhibit P,** Various Documents illustrating Overtime Assignments to Borough Police Officers.)

112.  No one from the Borough including the Chief of Police and  the Mayor has said anything to Hernandez about his ethnicity (**Exhibit H** Deposition of Antonio Hernandez Part II, 160:12-16).

113.  Officer Hernandez never had a poor performance review. (**Exhibit H** Deposition of Antonio Hernandez Part II, 196:12-197:8)

114.  Officer Hernandez began seeing a mental health professional only after the filing of his complaint. (**Exhibit H** Deposition of Antonio Hernandez Part II, 195:10-196:2). (*see also* **Exhibit Q** Medical Notes provided by Sandra Carlson, LCSW, LCADC).

{00555789.DOC}

## DETECTIVE OSVALDO RIVERA

115.    Officer Osvaldo Rivera is Hispanic, both parents are Puerto Rican. (**Exhibit R,** Deposition of Osvaldo Rivera, 9:23-10:1).

116.    Officer Rivera was hired in 1995 by the Fort Lee Police Department as a Patrol Officer. (**Exhibit R,** Deposition of Osvaldo Rivera, 13:14-16).

117.    Officer Rivera has served on the ESU and requested to be placed on same. (**Exhibit R**, Deposition of Osvaldo Rivera, 14:9-19).

118.    Officer Rivera has served on the Fort Lee Police Department for approximately fourteen years. (**Exhibit R,** Deposition of Osvaldo Rivera, 20:3-18).

119.    Officer Rivera is currently on loan to work undercover for the Department of Homeland Security. He reports to either his Lieutenant or Chief Ripoli and has contact with the Borough approximately once a month. (**Exhibit R,** Deposition of Osvaldo Rivera 49:23-51:11).

120.    Officer Rivera was nominated by Chief Ripoli and was awarded the Chief's Award in 2008 for excellent service. (**Exhibit R** Deposition of Osvaldo Rivera, 23:1-12).

121.    Officer Rivera has not felt at any time, since Chief Ripoli became the chief that he has been discriminated against because of his ethnicity. (**Exhibit R**, Deposition of Osvaldo Rivera, 26:22-27:1).

122.    At the beginning of his career with the Borough, Officer Rivera felt he was discriminated against when a detective, who has since retired and whose name Officer Rivera could not recollect, made a disparaging comment to him. (**Exhibit R,** Deposition of Osvaldo Rivera, 34:16-37:8).

123.    Other than a conversation Officer Rivera had with Hernandez several days prior to his deposition Hernandez had never told Officer Rivera that he felt he had been discriminated against. (**Exhibit R**, Deposition of Osvaldo Rivera, (28:12-18).

124.    Officer Rivera has been disciplined in the past. (**Exhibit R**, Deposition of Osvaldo Rivera, 29:6-30:20).

125.    Officer Rivera does not believe he has been disciplined in any way differently from any other Officer. (**Exhibit R**, Deposition of Osvaldo Rivera, 33:3-7).

## DETECTIVE JAMIE CUEVAS

126.    Officer Cuevas is Puerto Rican, and was born in Puerto Rico. (**Exhibit S**, Deposition of Jamie Cuevas 7:22-24).

127.    Officer Cuevas has been employed by the Fort Lee Police Department since August 1999. (**Exhibit S**, Deposition of Jamie Cuevas 10:1-2).

128.    Officer Cuevas has served in the ESU from approximately 2002 through the date of his deposition. (**Exhibit S**, Deposition of Jamie Cuevas 10:25-11:6).

129.    All officers are able to join the ESU after a certain period of time and are given six months probationary time during which they are evaluated. (**Exhibit S**, Deposition of Jamie Cuevas 12:12-16).

130.    Officer Cuevas is a juvenile director and the School Resource Officer at the Fort Lee High School. Officer Cuevas has held this position since 2007.  He is also a gang liaison and runs juvenile Junior Police Academy each summer. (**Exhibit S,** 13:13-14:14, 16:8-16).

131.    Under Chief Ripoli's command Officer Cuvas does not feel that he has ever been treated differently, harassed or discriminated against in any way by superior officers for being Hispanic. (**Exhibit S**, Deposition of Jamie Cuevas 27:1-10).

132.    Hernandez has never discussed any harassment or disparate treatment by the Mayor, Borough Council or member of the Police Department with Officer Cuevas. (**Exhibit S,** Deposition of Jamie Cuevas 31:25-34:5-11).

133.    Officer Cuevas has been disciplined various times during his employment with the Borough. (**Exhibit S**, Deposition of Jamie Cuevas 31:25-3, 34:5-11).

134.    Officer Cuevas feels that during his time at the Borough his ethnicity has not held him back from receiving assignments or promotions. (**Exhibit S**, Deposition of Jamie Cuevas 36:1-5).

## OFFICER ALEJANDRO LORENZO

135.    Officer Alejandro Lorenzo describes himself as Hispanic, he is Cuban. (**Exhibit T**, Deposition of Alejandro Lorenzo, 8:8-14).

136.    Officer Lorenzo was hired by the Borough in January 2002. (**Exhibit T,** Deposition of Alejandro Lorenzo, 11:7-9).

137.    Officer Lorenzo was loaned to the Bergen County Prosecutor's Office on or about April 2004. Officer Lorenzo was assigned to the Prosecutor's Office to do undercover work for a money laundering unit. This assignment was considered prestigious. (**Exhibit T,** Deposition of Alejandro Lorenzo, 15:11-24).

138.   Officer Lorenzo became a member of the ESU when he was invited by Sergeant Monico while he was working for the Prosecutor's Office. (**Exhibit T,** Deposition of Alejandro Lorenzo, 19:16-20:7).

139.   Officer Lorenzo has not taken any promotional exams because he does not feel the need to be a supervisor at this time. (**Exhibit T,** Deposition of Alejandro Lorenzo, 21:15-24).

140.   Officer Lorenzo has never felt that he has been discriminated against for being Hispanic and has no knowledge of any other officer feeling discriminated against for this reason. (**Exhibit T,** Deposition of Alejandro Lorenzo, 25:5-23).

141.   Officer Lorenzo has been involved in approximately three motor vehicle accidents while on duty. He has not been disciplined for failing to report an accident or an injury. (**Exhibit T,** Deposition of Alejandro Lorenzo, 39:7-23).

142.   Officer Lorenzo has received written reprimands for violating an operating procedure in regards to a vehicle pursuit. (**Exhibit T,** Deposition of Alejandro Lorenzo, 40:10-18).

## OFFICER RICHARD HERNANDEZ

143.   Officer Richard Hernandez describes himself as Cuban Hispanic. (**Exhibit U,** Deposition of Richard Hernandez, 8:18-9:1).

144.   Officer R. Hernandez was hired by the Borough in January 2003. (**Exhibit U,** Deposition of Richard Hernandez, 10:12-14).

145.    Officer R. Hernandez became a member of the ESU during his first year on the force after being approached by several other officers about joining the unit. (**Exhibit U**, Deposition of Richard Hernandez, 12:20-13:15).

146.    Officer R. Hernandez is a member of the motorcycle unit, the honor guard and the K-9 unit in addition to being a member of the E.S.U. (**Exhibit U**, Deposition of Richard Hernandez, 15:16-16:8, 17:5-21; 17:25-18:8).

147.    Officer R. Hernandez feels that his assignments are prestigious. (**Exhibit U**, Deposition of Richard Hernandez, 16:2-8).

148.    Officer R. Hernandez has taken the Sergeant's exam but has no interest in being promoted and removed from the K-9 unit at this time. Officer R. Hernandez enjoys being on the K-9 unit. (**Exhibit U**, Deposition of Richard Hernandez, 19:10-20:14).

149.    Officer R. Hernandez has not felt at any time that he has been discriminated against while employed with the Borough. (**Exhibit U**, Deposition of Richard Hernandez, 22:6-14, 24:1-25:2).

150.    Hernandez, plaintiff, expressed dissatisfaction with certain situations prior to the filing of his complaint but never told Officer R. Hernandez that he felt discriminated against based on his ethnicity. (**Exhibit U**, Deposition of Richard Hernandez, 79:1-12)

151.    Officer R. Hernandez has received minor discipline but does not feel that he has been unfairly disciplined at any time. (**Exhibit U**, Deposition of Richard Hernandez, 22:15-22).

152.    Officer R. Hernandez does not have any knowledge of acts of discrimination against any Hispanic officer within the department. (**Exhibit U**, Deposition of Richard Hernandez, 23:4-6).

153.    Promotions are determined by civil service, through a civil service test which all officers must take. (**Exhibit U**, Deposition of Richard Hernandez, 26:10-11).

154.    Officer R. Hernandez has been involved in two to three motor vehicle accidents while on duty. Officer R. Hernandez was spoken to about these accidents and told to be more careful.  (**Exhibit U**, Deposition of Richard Hernandez, 47:9-48:25).

155.    Officer R. Hernandez has never been addressed or disciplined for being late to court. (**Exhibit U**, Deposition of Richard Hernandez, 50:2-19).

## OFFICER NICHOLAS ORTA

156.    Officer Nicholas Orta is Puerto Rican and was born in the United States. (**Exhibit V**, Deposition of Nicholas Orta, 10:10-18).

157.    Officer Orta was hired by the Borough as a patrol officer in August 1993. (**Exhibit V**, Deposition of Nicholas Orta, 12:10-16).

158.    Officer Orta has never requested to be on the E.S.U. (**Exhibit V,** Deposition of Nicholas Orta, 14:24-15:3).

159.    Officer Orta has gone through the grievance process twice in response to a discipline received. The matters were settled and his discipline reduced from a two day suspension to one day suspension in the first instance and from a three day suspension to a one day suspension in the second.  (**Exhibit V,** Deposition of Nicholas Orta, 33:22-:34:18).

160.    Officer Orta is currently grieving a recent discipline. (**Exhibit V,** Deposition of Nicholas Orta, 34:19-36:2).

161.    Officer Orta has never felt that any of his discipline was the result of discrimination based on ethnicity. (**Exhibit V,** Deposition of Nicholas Orta, 56:21-57:8).

162.    Officer Orta could not recall any instance in which Hernandez expressed that he felt he was being discriminated against prior to the filing of his complaint. **Exhibit V**, Deposition of Nicholas Orta, 22:6-14).

## OFFICER CARLOS CABRERA

163.    Officer Carols Cabrera describes his ethnicity as Cuban. (**Exhibit W,** Deposition of Carols Cabrera, 9:18-22).

164.    Officer Cabrera was hired by the Fort Lee Police Department in September 1995. (**Exhibit W,** Deposition of Carols Cabrera, 12:15-20).

165.    Officer Cabrera has served on the E.S.U. for about two years.  He decided to withdraw from the unit due to family issues.  (**Exhibit W,** Deposition of Carols Cabrera, 14:2-4, 17:4-8).

166.    Officer Cabrera has taken a promotional exam in the past and has chosen not to do so again due for personal reasons. (**Exhibit W,** Deposition of Carols Cabrera, 17:12-18:8).

167.    During Chief Ripoli's tenure as chief, Officer Cabrera has never felt discriminated against, harassed or treated differently because of his ethnicity. (**Exhibit W,** Deposition of Carols Cabrera, 20:3-8).

168.    Besides the instant lawsuit, Officer Cabrera has never heard any other Hispanic officer complain about being harassed, discriminated against or treated differently. (**Exhibit W,** Deposition of Carols Cabrera, 20:9-17).

169.    Hernandez has never told Officer Cabrera that the was being treated differently because he was Hispanic. (**Exhibit W,** Deposition of Carols Cabrera, 25:4-10).

170.    Officer Cabrera has never felt that he was treated differently by anyone in the Borough, the Police Department, the Borough Council or any mayor. (**Exhibit W,** Deposition of Carols Cabrera, 25:11-25).

171.    Hernandez never told Officer Cabrera that he was being discriminated against by anyone in the Borough or Fort Lee Police Department because he was Hispanic. (**Exhibit W,** Deposition of Carlos Cabrera, 25:4-18).

172.    Officer Cabrera became aware of the hiring freeze because he read the council meeting minutes. He states that the freeze was instituted because the Borough was in financial turmoil. (**Exhibit W,** Deposition of Carols Cabrera, 26:1-27:17).

173.    Officer Cabrera is in charge of all the borough vehicles, primarily the police fleet. He is in charge of all the motor vehicles, registrations, insurance, assigning vehicle and maintaining vehicles. (**Exhibit W,** Deposition of Carols Cabrera, 28:8-29:7).

**OFFICER PEDRO MOREY**

174.    Officer Pedro Morey considers himself Hispanic. His parents were both born in Ecuador; he was born in the United States. (**Exhibit X**, Deposition of Pedro Morey, 10:1-8).

175.    Officer Morey was hired by the Fort Lee Police Department in August 1993. (**Exhibit X**, Deposition of Pedro Morey, 12:13-21).

176.   Officer Morey currently serves on the E.S.U. He was assigned to the unit in about May of 1995 after requesting to be assigned there by letter and speaking to contemporary team leaders.  (**Exhibit X**, Deposition of Pedro Morey 13:20-14:10).

177.   Officer Morey has taken one Sergeant's examination a few years after joining the F.L.P.D. but has not taken a promotional exam since. He does not have a particular reason for declining to take a second exam. (**Exhibit X**,  Deposition of Pedro Morey, 15:2-16:4).

178.   Officer Morey did not feel discriminated against on the basis of his ethnicity during Chief Tessaro's tenure as chief of police. (**Exhibit X**,  Deposition of Pedro Morey 24:19-25:1).

179.   Officer Morey has not felt discriminated against or that other officers have treated him differently or that he has been subjected to a hostile work environment because he is Hispanic during Chief Ripoli's tenure. (**Exhibit X**,  Deposition of Pedro Morey 25:2-8).

180.   Officer Morey has never felt discriminated against by the Borough Council or any mayor including Mayor Sokolich. (**Exhibit X**, Deposition of Pedro Morey 25:15-26:1).

181.   Officer Morey has been disciplined while employed by the Borough. He has received written reprimands but has never been suspended. (**Exhibit X**,  Deposition of Pedro Morey 29:6-13).

182.   Officer Morey was counseled for being late to traffic court. (**Exhibit X**, Deposition of Pedro Morey 30: 16-21).

183.   Officer Morey has never filed a grievance during his employment with the Borough. (**Exhibit X**, Deposition of Pedro Morey 30:13-15).

184.    Officer Morey does not feel that other officers are favored for overtime assignments over him. (**Exhibit X**, Deposition of Pedro Morey 47:22-24).

185.    Prior to the filing of the lawsuit, Hernandez expressed to Officer Morey that he felt he was being treated differently but did not specify that he felt he was discriminated against because of his ethnicity. (**Exhibit X**, Deposition of Pedro Morey 76:18-77:6).

## OFFICER JOHN ORDONEZ

186.    Officer John Ordonez defines his ethnicity as American and Spanish. His father was born in Spain and his mother was born in Ecuador. (**Exhibit Y**, Deposition of John Ordonez 10: 5-16).

187.    Officer Ordonez was hired by the Fort Lee Police Department in July of 1998. (**Exhibit Y**, Deposition of John Ordonez 13:14-16).

188.    Officer Ordonez became a member of the E.S.U. in approximately 2003. Officer Ordonez is currently a member of the unit.   (**Exhibit Y**, Deposition of John Ordonez 13:25-14:13).

189.    Officer Ordonez is assigned to Hostage Negotiations. (**Exhibit Y**, Deposition of John Ordonez 18:11-21).

190.    Officer Ordonez has never taken a promotional exam because he does not want to be a supervisor. (**Exhibit Y**, Deposition of John Ordonez 24:18-25:18).

191.    Officer Ordonez could not recall any time that Hernandez expressed that he felt he was being discriminated against on the basis of his ethnicity to him. (**Exhibit Y**, Deposition of John Ordonez, 31:1-32-33:25).

192.    Officer Ordonez has not felt that he has ever been subjected to a hostile work environment or treated in a discriminatory manner because of his ethnicity in his employment with the Borough. (**Exhibit Y**, Deposition of John Ordonez 34:1-35:4).

193.    Officer Ordonez has received a meritorious service award from the New Jersey Latino Peace Officers Organization and has been nominated by Chief Ripoli for the Chief's Award. (**Exhibit Y**, Deposition of John Ordonez 81:18-82:8).

194.    Officer Ordonez has stated that Hernandez was treated differently because of his personality not because of his ethnicity. (**Exhibit Y**, Deposition of John Ordonez 90:4-7).