**NOT FOR PUBLICATION**                                                                 **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTONIO HERNANDEZ, | : |
| | : Civil Case No. 09-1386 (FSH) (PS) |
| Plaintiff, | : |
| | : **OPINION** |
| v. | : |
| | : Date: June 8, 2010 |
| BOROUGH OF FORT LEE, *et al.* | : |
| | : |
| Defendants. | : |
| | : |

**HOCHBERG, District Judge**:

**I.      INTRODUCTION**

Plaintiff brings this employment discrimination lawsuit under 42 U.S.C. §§ 1983 and 1985(3), and the New Jersey Law Against Discrimination.  This Court has federal question jurisdiction over the case, pursuant to 28 U.S.C. § 1331.  Plaintiff is a police officer in the Borough of Fort Lee.  Defendants are the Borough of Fort Lee, Chief of Police Thomas Ripoli, and Mayor Mark Sokolich.  Plaintiff alleges that defendants unlawfully discriminated against him by refusing to promote him to the rank of sergeant due to his ethnicity (Hispanic) and subjecting him to harsher discipline than similarly situated Caucasian officers.  Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

**II.     BACKGROUND**

Plaintiff, an Hispanic male, is a police officer in the Borough of Fort Lee.  He joined the department in 2000, when Chief Tessaro was the Chief of Police, as a transfer from

the Paterson Police Department. Defendant Ripoli has been Chief of Police at all times relevant to this action. Defendant Sokolich was sworn in as mayor of Fort Lee in January 2008; he had been a councilman in Fort Lee prior to that.

Plaintiff currently earns "top pay" for a patrol officer, with an annual base salary of $90,910. Plaintiff has never had a negative performance review. No one from the Borough, including defendants, has ever said anything to plaintiff about his ethnicity. All eight Hispanic officers currently employed in Fort Lee were deposed in this matter, and none of them testified to having been discriminated against because of his ethnicity. *See* Cuevas Dep. 27:10; Rivera Dep. 27:1; Lorenzo Dep. 25:9; R. Hernandez Dep. 22:10; Orta Dep. 20:2;[1] Cabrera Dep. 20:8; Morey Dep. 25:9; Ordonez Dep. 34:15.

### A. Promotion

Fort Lee is a Civil Service municipality. That means that the town establishes a table of organization and makes promotions in accordance with the table. All promotions are subject to the Civil Service Rules. In order to be eligible for promotion, a police officer must take a test administered by the New Jersey Civil Service Commission. The test results are released three to four months after the test; candidates are ranked according to their score.

Plaintiff has sat for the civil service test twice. The first time, in 2005, his score placed him third on the promotional list. This list was effective from January 12, 2006 until January 11, 2009. Officers Krautheim and Zusi, a Caucasian female and male, ranked first and second on the list, respectively. The second time plaintiff sat for the test, in 2009, his score ranked him eighth or lower on the list. (Plaintiff does not remember his exact ranking.)

---

[1] Officer Orta testified: "I don't know."

If a position on the table of organization is open, the Chief of Police may request that a promotion be made to fill the position. If this occurs, the Borough Administrator requests a certified "list of eligibles" from the New Jersey Department of Personnel. The Borough has the discretion to hire any of the top three persons certified on the list of eligibles – the so-called "rule of three." *See* N.J. Admin. Code § 4A:4-4.8(a)(3) ("Upon receipt of a certification, an appointing authority shall [a]ppoint one of the top three interested eligibles (rule of three) from an open competitive or promotional list."). If the Borough promotes a candidate over a higher-ranked candidate on the promotional list, the Borough must submit to the Department of Personnel a statement of reasons why that candidate was selected. *Id.* § 4A:4-4.8(b)(4). Notwithstanding the discretion afforded by the rule of three, during Chief Ripoli's tenure, a lower-ranked candidate has never been promoted over a higher-ranked candidate. Plaintiff testified that he is unaware of any other member of a protected class in Fort Lee (besides himself, allegedly) who was not promoted off a list when they were eligible to be promoted.

In April 2006, the Borough requested a certified list of eligibles to fill two open positions for the rank of sergeant. The Department of Personnel certified officers Krautheim and Zusi, who were first and second on the list, respectively, for the open positions. They were promoted to the rank of sergeant, effective May 11, 2006. Plaintiff was third on the list but was not certified by the New Jersey Department of Personnel on the list of eligibles.

Upon the promotions of officers Krautheim and Zusi, plaintiff became first on the promotional list. Since that time, no one has been promoted to sergeant in Fort Lee. There has been an opening for a sergeant on the Fort Lee organizational table since the retirement of Sgt. Choromanski in August 2006, but it has never been filled. On February 28, 2008, Fort Lee

instituted a hiring freeze due to the financial crisis. Since it went into effect, no police officer has been promoted to any rank.

**B.     Unequal Discipline**

Plaintiff alleges in the complaint that defendants "have systematically disciplined Caucasian police officers in a different and more lenient manner than non-Caucasian police officers." Compl. ¶ 11. In support of this allegation, plaintiff highlights several disciplinary measures taken against him that he asserts were unwarranted, including:

- Plaintiff was counseled by Captain Zevits for patronizing a bagel shop where one of the owners was arrested for a drug violation. He alleges that numerous other officers continued to patronize that establishment without discipline.

- Plaintiff received a written reprimand from Lt. Bendul for being late to Municipal Court. He alleges that officers are late or neglect to appear at court at every Court session and none have received written reprimands like him.

- Plaintiff received a written reprimand from Captain Bortolus for copying his litigation counsel on an internal email. He filed a grievance disputing this reprimand.

- Plaintiff received a verbal reprimand from Captains Zevits and Hervey and Detective Menchise for failing to secure the premises when responding to a burglar alarm. He claims that he relied on a co-officer's report that the exterior was secure.

Police officers may challenge any discipline through a formal grievance process set forth in the Collective Bargaining Agreement. Plaintiff never filed a grievance with respect to any disciplinary action prior to this lawsuit. In April 2009, after he instituted this lawsuit, he grieved the reprimand that he received for copying his litigation counsel on an internal communication. His grievance was ultimately denied by the Borough. Plaintiff had the right under the Collective Bargaining Agreement, Article XI, to refer the Borough's denial of his

grievance to the Public Employment Relations Commission to be heard before an independent arbitrator.

Every Hispanic officer currently employed in Fort Lee was deposed in connection with this action. Five of them flatly denied that they had ever been disciplined unfairly in comparison with Caucasian officers. *See* Rivera Dep. 33:7; Cuevas Dep. 37:22-24; Lorenzo Dep. 25:23; R. Hernandez Dep. 22:22; Ordonez Dep. 36:20. The parties have not submitted deposition testimony from the other three Hispanic officers where that question was asked and answered directly.

### III.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors

could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production. *Celotex*, 477 U.S. at 323. This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322-23. This burden can be "discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, thus establishing the existence of a "genuine issue of material fact" justifying trial. *Miller*, 843 F.2d at 143; *accord Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id*. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 249-50.

## IV.   DISCUSSION

### A. Plaintiff's Federal Claims

Plaintiff asserts two federal claims, pursuant to 42 U.S.C. §§ 1983 and 1985(3). It is well established that these statutes do not create any substantive rights; they provide a remedy for the violation of other recognized rights, such as constitutional rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) (§ 1983); *Brown v. Philip Morris Inc.*, 250 F.3d 789, 805 (3d Cir. 2001) (§ 1985(3)). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Oliver*, 510 U.S. at 271. Plaintiff alleges that defendants are liable under § 1983 for violating his rights under the due process clause and the equal protection clause of the Fourteenth Amendment, and under § 1985(3) for conspiring to violate his rights under the equal protection clause.

### B. The *National Sea Clammers* Doctrine

Although plaintiff alleges that he was discriminated in the terms and conditions of his employment, he has not filed a claim with the EEOC or sought relief under Title VII. Defendants argue that this precludes plaintiff from seeking relief under 42 U.S.C. § 1985(3). They rely on *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 378 (1979), which held that one cannot sue under § 1985(3) to redress violations of rights created by Title VII. Instead, one must avail oneself of the remedial scheme provided by Congress in Title VII. *Id.* However, plaintiff is not asserting rights *created* by Title VII, as was the case in *Novotny*. He invokes §§ 1983 & 1985(3) to redress alleged violations of his rights under the Fourteenth Amendment.

Defendants' argument appears to invoke the *National Sea Clammers* doctrine. It states that where Congress expressly established a sufficiently comprehensive remedial provision

7

in a federal statute, alternative suits to enforce those same rights are barred. *See Williams v. Sch. Dist. of Bethlehem, Pa.*, 998 F.2d 168, 176 (3d Cir. 1993) (holding that § 1983 suit was "subsumed" by Title IX claim). However, Congress did not intend for Title VII to be an exclusive remedy for non-federal employment discrimination; plaintiff may avail himself of alternative statutory avenues of relief. *See Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 459 (1975) (holding that § 1981 claim was not preempted by Title VII). The Third Circuit has explained that "the comprehensive scheme provided in Title VII does not preempt section 1983, and ... discrimination claims may be brought under either statute, or both." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1079 (3d Cir. 1990). Regardless of whether § 1985(3) remains available to redress alleged constitutional violations in the employment context (about which the Court need express no opinion), it is clear that plaintiff could proceed under § 1983. Thus, the Court will examine plaintiff's constitutional claims on the merits.

    C.    **Due Process**

Plaintiff argues that defendants violated his right to due process by failing to promote him. According to plaintiff, he had a property interest in obtaining the promotion, because an open position existed in the table of organization, and he occupied the top position on the promotional list.[2] This argument is without merit.

To have a property interest in a promotion that is protected by the due process clause, plaintiff must have had "a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). It is insufficient to have had a "unilateral

---

[2] Plaintiff does not argue that defendants' actions violated any liberty interest secured by the Due Process Clause.

expectation" of being promoted. *See id.* Under the "rule of three," the Borough had the discretion to promote any of the top three names on the promotional list. N.J. Admin. Code § 4A:4-4.8(a)(3); *see also Terry v. Mercer County Bd. of Chosen Freeholders*, 430 A.2d 194, 198 (N.J. 1981) (explaining that a rule of three provision "does not purport otherwise to circumscribe the manner in which the authority must select the 'one of the three' for appointment. Thus, the purpose of the 'rule of three' is to narrow hiring discretion, not to eliminate it").

When plaintiff was third on the promotional list, the two officers ahead of him were promoted to the rank of sergeant. Since that time, no one has been promoted to sergeant. Plaintiff argues that following the retirement of Sgt. Choromanski, there was an opening on the table of organization that required the Borough to promote someone to sergeant. This argument fails because, even if there had been a promotion, the "rule of three" vested the Borough with the discretion to select either plaintiff or the officer occupying the second or third slot on the promotional list. Although plaintiff might well have had a unilateral expectation of being promoted because he was first on the promotional list from May 11, 2006 until January 11, 2009, he was never *entitled* to a promotion. *See Pollock v. City of Ocean City*, 968 F. Supp. 187, 190 (D.N.J. 1997) (holding that plaintiff who "took the civil service test, scored first, and enjoy[ed] preferential treatment as a veteran, [] attained no entitlement to the position" under the meaning of the due process clause). Defendants are entitled to summary judgment on plaintiff's § 1983 due process claim.

D.  **Equal Protection**

Plaintiff alleges that defendants' actions violated his rights under the equal protection clause of the Fourteenth Amendment. For plaintiff to survive summary judgment on a

9

claim under the equal protection clause, there must be a triable issue of fact that defendants purposefully treated him differently from similarly situated non-Hispanic police officers. *See Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009). Discrimination is purposeful if it "involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) (quotations and alterations omitted). Plaintiff must also prove that "each Government-official defendant, through the official's *own individual actions*, has violated the Constitution." *Id.* (emphasis added).

Plaintiff concedes that "there is little direct evidence of the Defendants' intent to discriminate against [him] based on his ethnicity." Pl's Opp'n at 38. Instead, he seeks to rely on circumstantial evidence – the "totality of the relevant facts" – to prove that the alleged discrimination was purposeful. *Pennsylvania v. Flaherty*, 983 F.2d 1267, 1273 (3d Cir. 1993) (quotations omitted).

        i.    <u>Failure to Promote Claim</u>

Defendants' failure to promote plaintiff does not constitute a prima facie case of discrimination under the equal protection clause. First, officers Krautheim and Zusi, who were promoted over plaintiff in May 2006, were not "similarly situated." They were ranked higher than plaintiff on the promotional list. It is undisputed that the highest eligible candidate has always been promoted during plaintiff's time on the force. It would set a dangerous precedent if invariably promoting the highest-ranked candidate from the promotional list could constitute a

violation of the equal protection clause by the Borough or the individual defendants.³ Such conduct is the antithesis of treating similarly situated candidates differently. *Cf. Smith v. Twp. of E. Greenwich*, 344 F. App'x 740, 745 (3d Cir. 2009) (holding that *highest*-scoring applicant, who was passed over for promotion, made out prima facie case of discrimination). Second, *no one* has been promoted to sergeant since May 2006. By failing to promote plaintiff since that time, defendants have not treated him differently from anyone at all. Based on the undisputed facts, defendants' failure to promote plaintiff did not violate the equal protection clause as a matter of law.

      ii.    Unequal Discipline Claim

Plaintiff argues that defendants violated his constitutional rights by subjecting him and other Hispanic officers to harsher discipline than similarly situated Caucasian officers. Again, plaintiff acknowledges that there is no direct evidence of discriminatory intent by defendants. Plaintiff has also not submitted indirect objective evidence indicating whether, *e.g.*, Caucasian officers are statistically less likely to receive discipline than Hispanic officers. Aside from his own belief, plaintiff has submitted no indirect subjective evidence that Hispanic officers as a class have been unfairly disciplined. The parties deposed every other Hispanic officer currently serving in Fort Lee; not one testified to being the victim of discrimination based on

---

      ³    The New Jersey Civil Service Commission is responsible for administering the promotional exam, and the list of eligibles for promotions are certified by the New Jersey Department of Personnel. Neither entity is a defendant in this action. Although the Court notes that the Justice Department filed suit against New Jersey and the Civil Service Commission under Title VII in January 2010, alleging that the civil service test disparately impacts African Americans and Hispanics, there are no allegations in this case that the promotional exam taken by plaintiff was biased. Furthermore, disparate impact, without a showing of discriminatory intent, is not actionable under the Fourteenth Amendment. *See Flaherty*, 983 F.2d at 1273.

11

ethnicity, whether with respect to discipline or otherwise, from which it might be inferred that plaintiff was also discriminated against. Defendants have met their initial burden under *Celotex*, 477 U.S. at 325, of showing that there is an "absence of evidence" supporting plaintiff's case.

To survive summary judgment, plaintiff has the burden to establish a genuine issue of material fact justifying trial. First, plaintiff cites the testimony of three witnesses, Kevin Kosuda, John Ordonez, and Jaime Cuevas, who testified that plaintiff receives more discipline than other officers. However, none of these witnesses testified that plaintiff's ethnicity is the reason for the different treatment. *See* Kosuda Dep. 47:1 (stating that he does not know why plaintiff is treated differently); Ordonez Dep. 57:1-9 (explaining that the enhanced scrutiny of plaintiff by supervisors is "human nature" because plaintiff has been involved in incidents in the past). Officer Cuevas testified that he was never present when plaintiff was disciplined; he believes plaintiff is treated differently because plaintiff told him so. *See* Cuevas Dep. 42:2-5, 24-25. This testimony is not significantly probative that the discipline plaintiff has received, even if unfair (about which the Court expresses no opinion), amounts to discrimination based on ethnicity, in violation of the equal protection clause.

Second, plaintiff highlights a series of disciplinary measures taken against him that plaintiff asserts were unwarranted. These include written reprimands for being late to Municipal Court and copying his litigation counsel on an internal email, a verbal reprimand for failing to secure the premises when responding to a burglar alarm, and counseling for patronizing a café where the owner had been arrested for a narcotics offense. Plaintiff argues that these events constitute discrimination because other officers have engaged in some of these same activities without discipline. This argument fails for three reasons. First, claims are too vague to

give rise to a reasonable inference of discrimination. *See Smith*, 344 F. App'x at 747 (summary judgment proper on unequal discipline claim when plaintiff made only generalized assertion that "just about everyone" had engaged in similar conduct "without any specifics as to the who, what, or when of such allegations"). Second, these anecdotes on their face do not show that plaintiff was treated differently because of, rather than in spite of, his ethnicity. Third, the disciplinary acts highlighted by plaintiff were from supervisors who are not defendants to this action, namely Lt. Bendul and Captains Zevits, Hervey, and Bortolus. The Supreme Court has explained that municipal officers and entities, such as defendants, are not liable for the actions of their subordinates under the theory of *respondeat superior*. *See Iqbal*, 129 S. Ct. at 1948. To the extent plaintiff failed to identify how defendants, by their own individual actions, violated his rights, he has failed to state a claim under the equal protection clause. *See id.*

Police officers in Fort Lee may challenge any discipline received through a grievance process. Plaintiff never filed a grievance with respect to any disciplinary action prior to this lawsuit. In April 2009, after he instituted this lawsuit, he grieved a reprimand that he received for copying his litigation counsel on an internal email communication. The grievance was ultimately denied by the Borough. Plaintiff had the right under the Collective Bargaining Agreement, Article XI, to refer the Borough's denial of his grievance to the Public Employment Relations Commission to be heard by an independent arbitrator; it does not appear from plaintiff's submissions that he chose to do so. Plaintiff may well hold a subjective belief the discipline that he has received was unfair. But the Court's task here is to evaluate claims of invidious discrimination – it "is not to assess the overall fairness of [the] employer's actions." *Logue v. Int'l Rehab. Assocs., Inc.*, 837 F.2d 150, 155 n.5 (3d Cir. 1988). That is particularly the

case where, as here, plaintiff did not even attempt to redress any of these allegedly unfair disciplinary measures through the ordinary channels prior to filing this lawsuit.[4]  Plaintiff has not met his burden to establish a triable issue of fact.  Thus, defendants are entitled to summary judgment on plaintiff's equal protection claim under 42 U.S.C. §§ 1983 and 1985(3).

### E. Plaintiff's State Law Claim

Plaintiff seeks relief under the New Jersey Law Against Discrimination (the "LAD").  Since defendants are entitled to summary judgment on plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over plaintiff's state law cause of action, pursuant to 28 U.S.C. § 1367(c)(3).  Plaintiff may press his LAD claim in New Jersey state court.[5]

---

[4]  In his opposition, plaintiff also appears to raise claims that (1) defendants harassed him by questioning his workers' compensation claims and (2) plaintiff received less overtime than similarly situated Caucasian officers.  In support of the former, he recounts several episodes wherein defendants expressed skepticism regarding his injuries, informed him that a workers' compensation claim would not be covered, or undertook a review of his workers compensation history.  There is no mention of this claim in the complaint, and plaintiff does not argue in his briefs that he was ever denied a workers' compensation claim to which he was entitled.

The latter claim (overtime), which is also completely absent from the complaint, suffers from the same lack of evidence as his unequal discipline claim: plaintiff has come forward with no evidence of discriminatory intent.  Furthermore, plaintiff testified that he has started to decline overtime since he filed his complaint.

[5]  To say that plaintiff may seek relief in state court is not to say that he will necessarily obtain it.  Plaintiff's LAD claim would face substantial obstacles.  For example, to prevail under the LAD on a failure to promote claim, plaintiff must prove, *inter alia*, that "after his rejection, the position was awarded to someone with equivalent or lesser qualifications." *Pepe v. Rival Co.*, 85 F. Supp. 2d 349, 365 (D.N.J. 1999), *aff'd*, 254 F.3d 1078 (3d Cir. 2001); *Palatnik v. The Home Depot, Inc.*, No. Civ. 04-1229(RBK), 2006 WL 680981, at *8 (D.N.J. Mar. 10, 2006); *see also Peper v. Princeton Univ. Bd. of Trustees*, 389 A.2d 465, 480 (N.J. 1978) (explaining in a sex discrimination case that plaintiff's "burden of demonstrating a [p]rima facie case required her to show that similarly situated males were promoted while she was not").  The fact that the Borough has not promoted anyone to sergeant since plaintiff assumed the top spot on

V.	CONCLUSION

For the reasons set forth in this opinion, defendants' motion for summary judgment is granted with respect to plaintiff's federal claims.  The Court declines to exercise supplemental jurisdiction over plaintiff's state law claim, which is hereby dismissed without prejudice.  An appropriate order will issue.

       /s/  **Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.

---

the promotional list in May 2006 will likely constitute a substantial hurdle for plaintiff's failure to promote claim under the LAD.